CHIEF JUSTICE WILLIAMS
delivered the opinion op the oodrt:
Appellants having purchased a large and valuable real estate in Louisville, sold by order of a special chancellor elected for the purpose, because the regular chancellor could not sit, and many of the preparatory orders also being made by a special chancellor, refused to pay their sale bonds, and on a rule for them to show cause why the payments were not made, they responded, alleging a want of title because of want of power in the special chancellor to order a judicial sale, and because of other alleged errors and irregularities affecting its validity— some of the defendants who held the legal title being minors, others non-residents, and some married women. *558 The want of legal power in the special chancellor is founded upon the idea that, as to the chancery court of Louisville, the Legislature could not authorize the election of a special chancellor, because not authorized by section 28, article .4, State Constitution, which is as follows : “ The General Assembly shall provide by law for holding circuit courts, when, from any cause, the judge shall fail to attend, or, if in attendance, cannot properly preside.”
The Legislature, by an act of January 17, 1854, 2 Stanton’s Revised Statutes, 534, provides “ that no suit in which the chancellor has equitable jurisdiction shall hereafter be removed from the Louisville chancery court to the Jefferson circuit court; and when, from any cause, the chancellor of said court cannot properly preside in a cause, the attorneys of said court, may, at the request of either of the parties, elect a chancellor pro tempore to try said cause.”
It is insisted that the Legislature had no constitutional authority for this enactment, because not within the authority of said section 28, article 4, Constitution, and that, without such special authority, neither the Legislature nor other source can invest any one with judicial power, save by appointment in the mode designated in the Constitution, whether this be by appointment from the Executive, from the Legislature, or by the people.
From a very early period in the history of Kentucky as a State, common law, equity, and criminal jurisdiction had been invested in the circuit court's of the State, and all exercised by the same judge, and this, too, when there was no such thing as a separate chancery court in the State, as contradistinguished from the circuit court; indeed, the Louisville chancery court was the first separate court of the kind organized in the Commonwealth, *559 and it was carved out of the jurisdiction of the Jefferson circuit court, to relieve it of part of its general jurisdiction, and to that extent of its vastly accumulated and increasing business. Said chancery court is recognized by section 40, article 4, State Constitution, but “subject to repeal, and its jurisdiction to enlargement and modification by the General Assembly,” thus still leaving it, as originally, but a statutory court formed out of the jurisdiction of the circuit court.
The circuit courts being of general common law, equity, and criminal jurisdiction, all the statutory courts having general jurisdiction of either of these branches may be said to be carved out of it; and, therefore, substantially, and for every legal and constitutional purpose, circuit courts, whatever may be their designation by name or cognomen ; hence, when the framers of the Constitution gave to the Legislature the right to provide by law for the election of special judges, or the holding of special circuit courts when the regular judge was absent or could not preside, it was doubtless meant to include all courts exercising the jurisdiction, or any part thereof, of circuit courts, by whatever designation they might be known. The object of such special provision was to relieve the litigants of the burdens and evils of protracting their litigation to await another judge, or to transfer their cause to a distant court; and as a general elective system was by this Constitution adopted, and for short terms, these evils would greatly multiply, as frequently a very prominent practitioner would be placed on the bench, leaving a large number of suits in which he could not properly preside, because of having been engaged therein as an attorney.
The same reasons and evils would apply to the Louisville chancery court, as well as other statutory courts, *560 which should be, from time to time, created to relieve the accumulated business of the circuit courts.
Looking at the evils to be remedied, and the objects in view, we can hardly suppose the convention attached more importance to the name than the jurisdiction of the court; therefore, we construe the meaning of this clause of the Constitution as conferring power to provide by law for the election of special judges for any court carved out of the jurisdiction of the circuit court, because, pro tanto, it is a circuit court, although called by another name.
We regard said enactment authorizing the members of the bar to elect special chancellors, from time to time, for said court, as emergencies may require, as constitutionally valid.
The records show that the several special chancellors were elected, but at whose instance, or whether they were sworn, does not appear; it may, however, be presumed, at plaintiff’s instance.
It is argued, with much plausibility, that, inasmuch as the orders of appointment are copied, nothing in their aid is to be presumed, as was the case in their total absence in Slone vs. Slone (2 Met., 340), and Vandever vs. Vandever (3 Met., 137); especially, as said act of January 17, 1854, requires the special chancellor to be elected as provided in chapter 27, article 13, 1 Stanton’s Revised Statutes, 323, which provides that the reasons of the election of a special judge, and the fact of taking the required oath, shall be entered on the order-book. This order, however, need not be copied into the record, but will be presumed to be correct, as this court said in said causes; but when it is copied, and thereby no qualification of the special judge appears, the presumption of its correctness is rebutted; whilst, on the other hand, it may *561 be argued that the election and qualification need not be in the same order; nor is it required that if one of the orders be copied, the other must also appear, or else its existence will not be presumed. All this reasoning on both sides may be regarded as more or less artificial; for if such orders do exist, it will always be easy to show them; and if they do not, in a direct proceeding assailing the validity of the sale by reason thereof, they cannot be shown.
But again, it is said by appellees that consent will be presumed, and that, an objection to the special judge will not be heard for the first time in this court; and this may be regarded as the settled rule as between the original parties to the record, before the court on actual service of process, and who are under no disabilities, but only as to them; for consent cannot be presumed against one only constructively before the court, nor against minors nor married women, much less can it be presumed against purchasers who are not parties to the original record; nor should the motion for a confirmation of the sale made by other parties than the purchasers, be deemed a waiver, nor, even if made by them, a waiver, as to any special judge other than the one then presiding.
There are other confessed irregularities in the case. This is a large and valuable real estate, within a thriving and already large city; time may add almost fabulous increased value to it; a large amount has already been paid by the purchaser, and a still larger sum remains to be paid. It cannot, therefore, be unreasonable to stay the collection of these payments for a reasonable time, to give either party opportunity, by amended pleadings and proceedings, under the inherent powers and jurisdiction of the chancellor, to perfect the proceeding, and to c'or *562 rect all the irregularities; and we think it but prudent and reasonable, in view of the character of the litigants and holders of the legal title, and the character and value of the property, to do so; but should neither party do so within a reasonable time, the purchasers should be released from the present purchase.
Should the parties holding the legal title of the decedent, Craig, or his devisees interested therein, offer to show equitable reasons against the confirmation of the title, they should be heard, and their rights, as well as those of the purchasers and the plaintiffs or creditors, be also adjudicated — in a word, in these amendatory and future proceedings the equitable rights of all the parties should be heard and adjudicated, if presented within a reasonable time.
The cases of Jas. S. Peak and others, including Walton Craig and wife against Emily M. Faulkner and her husband and others, and the case of Joseph S. Woolfolk and wife against Jas. S. Peak and others, were heard together in the court below, and one judgment of sale pronounced, being the same under which Rudd and Rubel purchased.
For the reasons assigned the judgment on the rule against the purchasers, Rudd and Rubel, are reversed, with directions for further proceedings consistent herewith.