J. B. BRYANT ET UX, JULIA J. LEMAIR, BY GUARDIAN *v.* WILLIAM
E. WADE ET UX.

**Process—Service on Minor before Guardian Appointed—Warning Order.**
    Constructive service, by warning order, cannot be had on a minor,
    before appointment of guardian, though the appointment be made before
    the expiration of the thirty days limitation.

**Revivor—Notice.**
    A revivor of an action by an administrator, must be upon duly executed
    notice, or by service of process on the amended petition, or by service
    of the order of revivor.

**Same—Judgment.**
    A judgment upon a bill or order of revivor, without service of any
    kind, is void.

**Consent Order Selecting Judge Pro Tem—Minors.**
    A consent order, selecting a pro tem judge, while binding on the adult
    litigants, is not binding on the minor defendants or plaintiffs, as they
    could make no consent.

**Officer—Right to Sell Under a Venditioni Exponas.**
    As an officer, by section 1, article 6, chapter 36, revised statutes
    475, is authorized to sell, after the reutrn day, under an execution, whilst
    it still remained in his hands, a fortiori, he may sell under a venditioni
    exponas.

**Sales—Property Devised Under Separate Clauses of Will.**
    It is error to sell, as a whole, the entire interest of one of the devisees
    of an estate. where the property embraced in the sale, was devised under
    separate clauses of a will, with different limitations thereon.

**Same—Restitution.**
    Before such a sale should be declared void, the purchase money should
    be refunded, upon equitable terms.

APPEAL FROM KENTON CIRCUIT COURT.

June 5, 1869.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Nicholas Lemair, the ancestor of these parties, died in the

year of 1848, testate, leaving one-fourth of the square of ground in Covington whereon was situated his dwelling house to his wife for life, the residue of his real estate to be rented out by his executor until his youngest child, now appellant Mrs. Bryant, arrived at majority, and then to be equally divided among eight children, Jacob, Issac K., Nicholas L., Frederick, Mary Jane and Alexander Lemair, and Harriett F. Wade and Elizabeth Bryant. Before Elizabeth arrived at full age all died save Mrs. Wade and Mrs. Bryant, and all were childless save Jacob, who left four children, three by his first, and appellant Julia J., by his second wife.

Isaac K. devised his whole interest to his wife, who renounced his will; hence, his property descended to his brothers and sisters as his heirs at law. Nicholas L. devised his estate to his brothers and sisters. Thus vesting the entire estate in Mrs. Wade and Mrs. Bryant and the children of Jacob Lemair, unless this has been prevented by some of the proceedings to sell different interest.

Mrs. Bryant attained majority on November 10, 1862, and soon thereafter commenced this suit for partition. In her original petition she avers that some of the interest in her deceased brothers estate had been sold to Wade her brother-in-law or his wife, that he had had control and possession of the entire estate for many years, but by subsequent amendments she asserts title to the entire interest devised from her father and descended from her deceased brothers and sister.

Julia Jacob Lemair by her answer and cross petition and response to the answer and cross petition of Wade and wife claims the entire interest under her grand father's will and as descended from her deceased uncles and aunts, and half brothers. She also asserts title to several houses and lots which Wade had been in possession of for several years, which she asserts belonged to her deceased father and uncle J. K. Lemair, but which Wade claimed by purchase under some judicial sales and as guardian for her half brother and sisters and had accounted to her for but a small portion of the rents, and she sought a partition of this property.

Pending this litigation, her half brother Nicholas Lemair also died, and by amendment she claimed her inheritance in his estate.

Wade and wife claimed the interest which passed by the will of her father, and descended to her from her deceased brothers and sisters; also J. K. Lemair's entire one-eighth in lots Nos. 348,

123 and 124, and Frederick's entire interest in his father's estate, and the one-seventh each which J. K. and Frederick inherited from their deceased brother Alexander; also the entirety to lots 121 and 123, all of which they claim under judicial sales, save that portion which Mrs. Wade inherited, and all of which the court allowed, and from which Bryant and wife and Julia J. Lemair have appealed.

The questions presented for our review being:

1. Whether Wade and wife are entitled to the one-eighth each of J. K. and Frederick Lemair?

2. Whether they are entitled to lots 121 and 122?

3. Whether Wade is entitled to young Nicholas Lemair's interest?

Wade and wife claim the one-eighth of J. K. Lemair under a judicial sale in the case of *Gresham vs. Lemair and others,* which was a suit begun April 28, 1855, against J. K. Lemair's heirs to recover a judgment and to sell property to pay a note for $3000 on said decedent. Moore, Reynolds & Combron filed a cross petition in the same suit claiming that said decedent had conveyed to them his property to secure certain debts.

The court adjudged a sale, and Wade and wife purchased.

Julia J. Lemair was made a party to these proceedings, then being only some three years old, but she insists that she never was served with process consequently that she never was divested of her interest.

The summons and return on both the original and cross petition shows no execution of process on her.

Nicholas Lemair, Julia's half brother, was only some twelve or thirteen years old when Greesbam commenced his suit; a warning order, was made against him October 11th, 1855, without affidavit, of plaintiff or other person or sworn pleadings averring any cause for a warning order, or return of any officer authorizing it, and the same day a guardian *ad litem* was appointed, who also at same time answered for him. Nicholas died pending the present sguit, and Julia set up a claim to an undivided third in his estate, but as under our statute of descent, collateral of the half blood only inherit half as much as those of the whole blood, Julia's two half sisters being the whole blood to said Nicholas, they are entitled to two-fifths each, and she to only one-fifth of his estate.

By section 91 Civil Code:

> "a defendant against whom a warning order has been made, shall be deemed to have been constructively summoned on the thirtieth day after the making the order."

And by section 56 Civil Code:

> "the guardian to defend shall be appointed by the court, or by the judge thereof. The appointment *cannot be made until after service of summons in the action,* as directed by the Code."

Mrs. Bryant arrived at majority November 10, 1862. Consequently she was only thirteen years and six months old when she was served, on May 11, 1855, on the original petition, and fourteen years and six months old when served on the cross petition May 14, 1856.

But it is contended that this judgment was void as to Mrs. Bryant, not only because there was no legal service of process on her on the original petition, it not being served on her guardian or custodian or parent, but also because it was void as to Julia J., and being void in part, it is void in whole.

This sale should be set aside upon equitable terms, that is, by the repayment of the money with its interest which extinguished that much of the decedent's indebtedness.

The elder Nicholas Lemair died siezed of lots Nos. 121 and 122 of Foote's addition to Covington.

Mrs. Wade claims No. 122 by virtue of the master commissioner's deed in the case of J. K. Lemair, surviving executor of Nicholas Lemair, deceased, v. Harriett Wade, etc.

Mr. Wade claims No. 121 by deed from Green, who holds the commissioner's deed in the same case to it. The papers in this case were lost during the pendence of the present litigattion, so that secondary evidence has to be resorted to to supply these, save as to the orders, judgment and deeds of record.

J. K. Lemair as sole surviving executor of his deceased father brought said suit against the devisees of said testator, including the children of Jacob, deceased, to raise money for certain purposes of the will by a sale of real estate, but before judgment he died, when Francis Lemair became administrator *de bonis non* with the will annexed of Nicholas Lemair, deceased, and filed her

petition of revivor March 23, 1865, and which was done by order and without notice, or process, or service of said copy, the cause was heard and the said lots adjudged to be sold, and which wer- afterwards sold as aforesaid.

There were then some thirteen defendants, eight of whom were under fourteen years of age.

The revivor must be upon duly executed notice, or by service of process on the amended petition or by service of the order of revivor. Civil Code, sections 562, 563.

If a presumption of process and service should be indulged on the record and judgment alone, yet when the lost record is supplied by secondary evidence, and process and service disproved, the legal presumption is rebutted, at least as against the minors who could not defend. No orders appointing guardian *ad litem* is in the record; had such been made, it would most likely have been of record, and not lost.

The parol evidence disproving service of process or notice in this case is fortified also from the fact that an amended petition by Mrs. Bryant, etc., was offered in the present case, based upon this want of service in said cause, which was resisted by Wade and wife, etc., and when the original papers were before the court, had an executed order or process or notice then appeared, the court would at once have rejected the amended petition, but instead thereof took until the next term when it was permitted to be filed, after which, the original papers in the said cause were lost.

A judgment upon a bill or order of revivor without service of any kind is void. *Amyx c. Smith's adm., 1 Met., 529.*

Whether the consent order selecting the *pro tem* judge to try the cause in the case of *J. K. Lemair, executor v. Wade,* or *Jacob Lemair v. Wade,* it could only bind the adults, and not the minors, as they could make no consent order, but the style being Lemair v. Wade, without the affix of executor to Lemair's name, the inference would be it was made in the latter case.

By section 1, article 6, chapter 36, Stant. Revised Statutes, 475, when an officer has levied an execution, before the return day thereof, but failed to sell the property, and has so returned, a *Venditioni exponas* may issue, commanding him to expose the property so levied to sale, *"and the like proceedings shall be had on such writs as might and ought to have been had on the first execution,"* and that an officer may, at any time after the return day,

*while the original execution is in his hands,* sell any property taken by him, before the return day, in virtue thereof.

As the officer is authorized to sell after the return day, whilst the execution still remains in his hands, so whilst the *venditioni* still remains in the officer's hands he may sell. As the officer incurs responsibilities for not returning executions within thirty days after their return day, if, for any cause, a sale is not made, he may save both his levy and liability by returning and getting a *venditioni,* and so he may return it and get another, but still his sale under either is good so long as the writ remains in his hands, unless this should be delayed for such an unreasonable length of time as to evidence an intention to abandon the levy. The sale, therefore, on a *venditioni* after its return day is not void, no more than would be a sale on *fi fa* after its return day. Therefore, the sale of J. K. Lemair's interest in his deceased brother's, Alexander's, estate by *venditioni,* after its return day, would not for that reason be void.

But a more difficult question arises out of the nature of the estate and the levy of the original execution. This levy and sale was on an undivided interest in the square of ground bounded by Sixth and Seventh, Scott and Greenup streets, 190 feet square, of which out of the northwest corner known as the tannery had been devised to Jacob and Nicholas until his youngest child arrived at age, then to be divided among his children. Near ten years of this particular estate had still to run when this execution sale was made. His dwelling, together with 190 feet square out of the southeast corner of said square was devised to the widow for life, and then to the children, and she still survives.

The remainder of the square was also to be divided among the children when the youngest arrived at age, but, by oversight, perhaps, no disposition was made of this until that period, so it descended as undevised estate.

So Alexander held different estates which descended to his heirs at law. J. K. Lemair being one of them, to-wit:

1. In one fourth of this square he held a remainder interest after the termination of the estate for years, or until his youngest sister arrived at majority, devised to Jacob and Nicholas Lemair.

2. Also a remainder interest after the termination of his mother's life interest in one-fourth.

3. He held an estate in one-half of said square under his father's will to begin when his youngest sister arrived at age.

4. He held an estate by descent from his father in and to one-half of said square for years until his youngest sister arrived at full age which had not been disposed of by his father's will.

All of which the sheriff attempted to sell and convey by one general levy and sale without designating what interest or what estate was sold, but selling all alike as though it was all the same identical estate and interest.

The levy and sale shows it was the entire interest which descended from Alexander to J. K. Lemair, without designating the estate which he had in each several division of the square.

The whole was valued at twelve hundred dollars and sold at about six hundred; it was, therefore, subject to redemption for one year.

The sale occurred August 5, 1854, and J. K. Lemair died previous to March 23rd, thereafter as his death is suggested of record on that day, before the redemption period had expired, and the purchasers were attorneys for the plaintiffs in the executions or some of them.

What the sheriff or valuers considered J. K. Lemair's interest in said property cannot be ascertained from this record.

It would perhaps be neither strictly legal nor right to regard this sale as absolutely void and thereby permit appellants to recover the property without refunding the purchase money which extinguished that much of decedent J. K. Lemair's indebtedness and which should have been paid out of his estate before appellants as his heirs should derive anything from him.

But it is apparent that the levy and sale were too irregular for the chancellor to permit it to stand and thereby deprive these minor heirs of their inheritance.

Wade and wife should, therefore, be required to relinquish to these appellants their proportion in the title to this property upon these heirs paying their due proportion of the original purchase money under the execution sale.

The amended answer and cross-petition against Wade by Julia J. Lemair alleging that Wade was her half brother Nicholas' guardian and had gotten his deed to his interest in this estate immediately on his arrival at age for an inadequate consideration and obtained by undue influence, and Nicholas having soon thereafter died pending the suit, she asked to have it set aside, which was not answered by Wade, yet the court disregarded it and refused parti-

tion to Julia J.   This amendment was likely overlooked in this voluminous record, yet without being controverted said conveyance should have been set aside as to Julia J. upon equitable terms, but Wade should yet have an opportunity to controvert it if he should offer to do to within reasonable time.

For these errors and irregularities said judgment is reversed, with directions for further proceedings as herein indicated.

*Stevenson & Myers, for appellants.*

*Furber, for appellees.*