## Feck v. Commonwealth.

(Decided May 29, 1936.)

L. Y. McCARTY for appellant.

B. M. VINCENT, Attorney General, and G. MURRAY SMITH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and prior to March 2, 1936, the Hon. W. R. Shackelford was the regular judge of the Eighteenth judicial circuit court district in this commonwealth embracing the county of Jessamine. A regular term of the Jessamine circuit court opened under the provisions of law on the day indicated; but prior thereto the fact was duly manifested to the Chief Justice of the Court of Appeals that Judge Shackelford was ill and would be unable to preside at that term of the court. Pursuant to existing law, the Chief Justice designated as special judge for that term the Hon. R. L. Bronaugh, who possessed all legal qualifications. He qualified himself officially for the place and began his duties in conducting the business of the court. On March 7, following the opening of the court, Judge Shackelford died, but the special judge continued to operate as such until March 9, when he adjourned court out of respect for the deceased regular judge and to attend the latter's funeral. Following the obsequies for Judge Shackelford, Special Judge Bronaugh (the allotted time for that regular term not having expired) reconvened the Jessamine circuit court on March 10, 1936, and proceeded to and did try a number of cases some twelve or more of which were criminal prosecutions and one of them was an indictment against the appellant, Joe Feck, who was charged with stealing chickens. When it was called for trial he entered a plea of guilty, and the jury impaneled to fix his punishment did so at one year's confinement in the penitentiary.

On March 12, following the death of Judge Shackelford, and after Special Judge Bronaugh had reconvened the court and tried cases as above pointed out (including the prosecution of appellant), Governor A. B. Chandler appointed Hon. W. J. Baxter as judge of that judicial district to fill the vacancy created by Judge Shackelford's death for the time intervening be-

tween then and an election at which the vacancy might be filled by the people. On that same day Judge Baxter appeared in the Jessamine circuit court and filed his commission as appointee of the Governor and took the oath of office. He thereupon announced that it was his opinion that all proceedings taken by Special Judge Bronaugh since and following the death of Judge Shackelford were void. Appellant then filed his motion for a new trial based upon the sole ground that "the special judge sitting at the time this defendant was tried had no authority to sit in this case and the verdict rendered herein was, therefore, illegal and void." No objection whatsoever was made, or in any wise intimated, against Special Judge Bronaugh's right and authority to preside at and conduct appellant's trial when it was had and which was conducted in strict conformity with the law. Notwithstanding Judge Baxter's opinion as expressed when he assumed office, he overruled appellant's motion for a new trial and pronounced judgment against him in accordance with the verdict of the jury, followed by this appeal prosecuted by him.

It is, therefore, readily seen that two questions are presented: (1) Whether Special Judge Bronaugh's authority to act as judge of the Jessamine circuit court terminated for all purposes upon the death of Judge Shackelford, the regular judge of the court, so as to render all subsequent action by the special judge absolutely void, or whether he was after the death of Judge Shackelford a de facto judge of the Jessamine circuit court without de jure authority, and which would render his acts and rulings only erroneous and voidable but binding on third parties and the public? And (2), if the latter consequence of Special Judge Bronaugh's subsequent sitting was and is true, may appellant complain of it for the first time in his motion for a new trial, not having objected in any manner before the conviction? To the disposition of those two questions we will now direct our attention.

In discussing the questions we shall eliminate therefrom collateral or kindred ones, among which is, whether or not the death of a regular judge during a regular term terminates that term, as well as the question as to the effect upon the authority of a special

judge appointed to hold that term to continue to act in the absence of an appointment of an interim de jure judge. We will also eliminate the question as to the right of a special judge to finish the trial of a case after the death of the de jure judge, occurring in the middle of the trial. Courts are in some conflict in their opinions upon such questions, although the majority of them, and apparently the best reasoned ones, hold that a special judge may not only finish a trial already begun by him after the death of the regular Judge (Beauchamp Case, post), but may likewise finish out the unexpired part of a regular term following the death of the regular judge after the beginning of that term. Having said this much, we will now proceed to answer the propositions contained in question 1, supra.

1. With us, and which is the declared policy in many other jurisdictions, the authority of a special judge terminates upon the death of the regular de jure judge of the court, and the position of circuit judge for that district becomes vacant to be filled according to the provisions of law prescribing for the purpose, which in this jurisdiction is by appointment by the Governor. See Beauchamp v. Commonwealth, 4 Ky. Law Rep. 27, 11 Ky. Op. 655; Small v. Reeves, 104 Ky. 289, 46 S. W. 726, 20 Ky. Law Rep. 504; Ky. Union Company v. Bailey, 174 Ky. 488, 192 S. W. 708; and Kentucky cases cited in note 49 subdivision (a) to the text in 33 C. J. p. 1034, sec. 226. Many other domestic cases could be cited to the same effect. But those named, with others that might be cited, refuse to declare that a duly appointed special judge in attempting to perform the duties of the office after the death of the regular judge thereby becomes a usurper; or that his acts and doings following the death of the regular judge are ipso facto void. On the contrary, such continued presiding by the special judge is performed as a de facto judge, since he assumed his temporary official position according to law and, of course, under color of authority and not as usurper. When so done his official acts after his temporary authority ceases, but in continuation of the duties for which he was appointed, become those of a de facto judge and cannot be collaterally attacked. After becoming final they are binding on the public and third parties. See Nagel v. Bosworth, Auditor, 148

Ky. 807, 147 S. W. 940; Orme v. Commonwealth, 55 S. W. 195, 21 Ky. Law Rep. 1412; Smith v. Commonwealth, 50 S. W. 241, 20 Ky. Law Rep. 1848; and cases cited in those opinions.

Such a holding is in accord with the prevailing rule on the subject as appears from the text in 33 C. J. 1038, sec. 237, and the text in 15 R. C. L. 517, sec. 7. The pertinent text in the first publication referred to says: "A special or substitute judge properly selected under authority of law is both a judge de facto and de jure." It then proceeds to point out that where there was never any valid authority for his appointment, or where the authority if valid had not been exercised and no designation or selection had been made, but nevertheless the alleged special judge attempted to act, he then became an usurper, and all of his acts would be void in toto. However, the text points out on the same page that when the appointment in its inception is both authorized and the law substantially complied with in making the appointment, then color to act after such authority ceases arises and renders the temporary officer a de facto judge within the declared rule. In that case, "The acts of a de facto special or substitute judge can not be overthrown in collateral attacks, nor in a direct attack unless objections to his acting as judge are properly made. * * * If jurisdiction exists, objections to the authority of a special or substitute judge may be waived by act or omission of the party in criminal as in civil proceedings, and ordinarily such objections are waived where they are not promptly made, but, if promptly made, the validity of his appointment (or right to continue to act, even though the appointment was valid) must be decided. The objection should be made at or before the trial, and can not be made for the first time on appeal." The cases in notes to that text fully sustain it. Among those cited is that of Coquillard Wagon Works v. Melton, 137 Ky. 189, 125 S. W. 291, and the Small Case, supra.

The text in the cited R. C. L. publication makes the statement that: "A de facto judge has been previously defined as one who exercises the duties of the judicial office under color of an appointment or election thereto." In the following section, beginning on page 518, it states that: "It has also been held that

where a judge in good faith remains in office after his title has ended, he is a de facto officer.''

Here, Judge Bronaugh was regularly appointed as special judge of the Jessamine circuit court under proper authority to do so and which was legally exercised. He thereby became vested, not only with color of right and authority, but with actual right and authority, and which latter had the effect to characterize his continued action after Judge Shackelford's death as having been performed under color of right and authority so as to immunize it against attack based upon the ground that it was absolutely void ab initio. That being true, we are brought to a consideration of question 2, supra, i. e., whether or not it was the duty of litigants before Judge Bronaugh, presiding as a de facto judge after the death of Judge Shackelford, to make timely objection to his doing so in their cases? And if they failed, whether or not they waived his want of actual authority so as to preclude them, after verdict, from reliance on such ground?

2. We have already incidentally referred to and cited authorities in support of the proposition that a waiver of the error, produced by the activities of a de facto judge, would be enforced in the absence of timely objections, one of which is the text in the citation of Corpus Juris, supra (volume 33, p. 1038). It sustains the proposition that timely objection should be made in such circumstances, and if not done the ground of objection will be waived. Domestic cases in notes 42 to and including 57 also completely sustain that proposition. Leading foreign cases to the same effect are cited in notes 43 and 44 thereto, prominent among which is the criminal prosecution of State v. Holmes, 12 Wash. 169, 40 P. 435, 41 P. 887. In note 54 there are cited the domestic cases of Rudd v. Woolfolk, 4 Bush, 555, and Bryant v. Wade, 3 Ky. Op. 213. Others on the same point of waiver, unless timely objections are made, are the Smith and Orme Cases, supra.

But it might be insisted that the effect of the opinion rendered by Judge Pryor in the Beauchamp Case, supra, is to the contrary (but with reference to criminal prosecutions only), since the learned judge in that case clearly approved the application of the waiver rule as to civil cases, and he also affirmed the judgment of con-

viction of the appellant therein upon the ground that the death of the regular judge occurred after the trial had commenced under the jurisdiction of the duly appointed special judge, but before it was completed. In such circumstances the court held that the authority of the special judge to proceed with the completion of the trial was possessed. That was the only question in the case, and any other question that may have attempted to be decided was and is dictum. But, even the dictum in that case does not announce a contrary rule as applicable to *criminal* prosecutions, since the opinion says: "In this case, *before* judgment of conviction, the question of jurisdiction was raised and the conviction claimed to be void, on the ground that there could not be a special circuit judge when there was no regular judge." (Our emphasis.) No such timely attempted raising of the question was made in this case. It appears for the first time in the motion for a new trial after the rendition of the verdict, and also after the court had pronounced judgment thereon, and all of which followed a plea of guilty.

Unless the waiver rule, as outlined, should be applied, then acquitted defendants in criminal prosecutions at trials during such de facto exercise of jurisdiction would be deprived of the plea of former acquittal; nor could a convicted defendant under such circumstances rely on the plea of former conviction. Jeopardy would not attach and a most confusing condition of affairs would be produced. In addition thereto, the nonrecognition of the waiver rule would encourage litigants, and attorneys representing them, to withhold known objections to the right of the presiding judge to try the case, and cause the commonwealth as well as witnesses to incur both trouble and expense in prosecuting the trial—all to no purpose, and in a chance effort to secure an acquittal—but which would in all probability be unavailable upon another prosecution for the same offense if, as above pointed out, the waiver rule should be discarded. It is not the policy of the law to reward such deception. On the contrary, it requires that when a known valid objection exists for not trying the case it should be made known to the court before the final result of the trial is reached. That rule is applicable to all other objections that might be interposed to any erroneous step or action, and we

see no reason why it should not be applied in the circumstances of this case the same as in all others.

Litigants should be required to observe the requirements of good faith toward the tribunals in which their cases are tried the same as other members of society in private transactions between or among them, unless there exists some constitutional or other provided barrier against the enforcement thereof. There is no such imperative or mandatory rule against the enforcement of the waiver here involved, not even as to one charged with violating the criminal law. Appellant knew, or should have known, of the termination of Special Judge Bronaugh's authority upon the death of Judge Shackelford. It then became his duty to interpose his objection to the trial of his case as based upon that ground if he desired to insist or rely upon it. Fairness and good faith toward the court required that he should then speak, or at least do so before the rendition of the verdict, and upon failure thereof to forever hold his peace. Having declined to do so, he must abide the consequences. We therefore conclue that the court properly overruled the motion of appellant for a new trial based exclusively upon the ground relied on and raised for the first time in that motion.

Wherefore, the judgment is affirmed.

The whole court sitting.

Richardson, J., dissenting.