STATE, EX REL. HUGH DUGAN, v. GEORGE H. FARRIER.

At the time and place designated for the annual meeting of the board of chosen freeholders of Hudson county, the members assembled. A person who, by virtue of his election as director, had previously been entitled to preside at meetings of the board, but whose office of director was then legally abolished, and who had become ineligible to the office of president, claimed the right still to preside, and assumed the chair. The board acquiesced and proceeded to business, and by ballot chose the relator to be county collector. *Held*, that the relator was legally elected.

---

On demurrer to an information in the nature of *quo warranto*.

Argued at June Term, 1885, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the relator, *A. L. McDermott*.

For the demurrant, *G. Collins*.

The opinion of the court was delivered by

DIXON, J. "An act to incorporate the chosen freeholders in the respective counties of the state" (*Rev., p.* 127,) consti-

tutes the freeholders elected in the several precincts of the re-
spective counties a body politic and corporate in law (section
1.)   It directs (section 6) that there shall be a stated meeting
of every such corporation annually, at a time and place desig-
nated, and (section 19) at that meeting each corporation shall
elect some fit person to the office of county collector.   It also
declares (section 7) that it shall be lawful for every such cor-
poration to elect, annually, one of its own members to preside
at its meetings, and in case of his absence or refusal to act,
directs that the corporation shall proceed to the election of
another.

In Hudson county the chosen freeholders number twenty,
and in the present year, at the time and place appointed for
their annual meeting, these persons assembled, and by a vote
of thirteen to seven chose the relator to the office of county
collector.   Before proceeding to the election, the corporation
had not elected one of its members to preside at its meetings,
but on the convening of the freeholders the chair was taken
by Patrick Govern, who had been elected by the people di-
rector of the board under "An act to re-organize the board of
chosen freeholders of the county of Hudson" (*Pamph. L.*
1875, *p.* 324,) and who, by virtue thereof, would have been
the lawful president of the board, if "An act concerning the
constitution of the boards of chosen freeholders of this state,
and to make uniform the selection and duties of directors of
such boards" (*Pamph. L.* 1885, *p.* 137,) had not abolished the
office created by the act of 1875.   The freeholders assembled
acquiesced in his assumption of the chair, and proceeded to
elect the relator, Mr. Govern taking no part therein other than
to state and put the motion to elect, and declare the result of
the election.

On information filed to oust the prior incumbent, who was
entitled to hold the office until his successor should be law-
fully appointed, he demurs, insisting that the election of the
relator was illegal, because the corporation did not first choose
one of its members to preside, but permitted a person not a
member to act as chairman.

This contention rests on two hypotheses: First, that the organization of the board, including the selection of a presiding officer, is essential to the exercise of its other functions; second, that the illegality in the organization rendered it absolutely void.

No countenance for these claims is found in the statute creating the corporation. Its pertinent provisions have been cited, and they indicate that the same entity, the corporation, which is to choose a president is to elect a collector. As in the former function it must act without the president, so it would not violate the terms of the statute if it were to do likewise in the latter. As to the effect of illegality in organization the statute is silent.

The demurrant, therefore, must seek his supports elsewhere, and he does so.

His first position, that the ordinary powers of a corporation do not vest until the body is organized by the selection of a presiding officer, need not, in the pending case, be questioned, because the acquiescence of all the members in the presidency of Mr. Govern was tantamount to electing him *pro hac vice*, and so the actual organization was complete.

The second position, that the illegality of the organization rendered it void, alone requires consideration.

The demurrant does not dispute the general principle which validates the acts of *de facto* officers and bodies, but he asserts that there are exceptions to it whereon his case can stand.

First, he insists that there can be no *de facto* officer unless there is an office *de jure*, and that as the office of Mr. Govern under the act of 1875 was abolished by the statute of 1885, he could not hold that office *de facto*, and so was not *de facto* president of the board. But this conclusion would be warranted only on the assumption that the office of president of the board was abolished, as well as the office created by the act of 1875, and that assumption is false; the presidency remained as an office *de jure*, and therefore there could be a president *de facto*.

Secondly, the demurrant contends that color of right is neces-

sary to constitute one an officer *de facto*, and that eligibility to the office is essential to a color of right, and that therefore as Mr. Govern was not a member of the board and so was ineligible to its presidency, he could not become *de facto* president.

The proposition, that a person cannot acquire the powers of a *de facto* officer if he is ineligible to the office which he actually fills, is opposed to the decision of this court in *State* v. *Anderson, Coxe* 318, where it was held that one who was ineligible to the office of sheriff was nevertheless sheriff *de facto*, and his acts as such were valid. To the same effect is *Corrigan* v. *Duryea*, 11 *Vroom* 266. Said Mr. Justice Daniel, in *Wright* v. *Mattison*, 18 *How.* (*U. S.*) 50, 56, "The courts have concurred, it is believed without an exception, in defining ' color of title' to be that which in appearance is title, but which in reality is no title. They have equally concurred in attaching no exclusive or peculiar character or importance to the ground of the invalidity of an apparent or colorable title." The rule which declares the acts of *de facto* officers valid, springs out of the public inconvenience to which it would lead, if the validity of their acts, when in office, depended upon the propriety of their election, which could not be ascertained at the time by those who were to rely upon or render obedience to such acts. *Scadding* v. *Lorant*, 3 *H. L. Cas.* 418. The eligibility of an officer is as difficult of ascertainment as his actual election, and sound policy requires that the public should be no more required to investigate the one than the other, before according respect to his official position. The ineligibility of Mr. Govern would not, therefore, prevent his becoming *de facto* president, if he had color of title.

It is plain that he had the requisite color of right. He had originally entered upon the office of president of the board of chosen freeholders with an absolutely legal title, growing out of his election as director under the act of 1875; his term had not yet expired by lapse of time, and his *bona fide* contention was that his office still lawfully continued, and he had never ceased to exercise its functions. These facts constituted a color of right. One who assumes an office legally and, in good

faith, remains in it after his title has ended, is a *de facto* officer. *Bacon's Ab.*, *tit.* "*Offices and Officers*," *E*; *Clark* v. *Ennis*, 16 *Vroom* 69. On another ground also he had a color of right. The power of electing a president belonged exclusively to the board of chosen freeholders, and it was for the board also to determine in what mode the power should be exercised. The acquiescence of the board in Mr. Govern's presidency, and its proceeding to business with him in the chair, gave him an appearance of title sufficient to render him president *de facto*.

Thirdly, the demurrant insists that a legal title to an office cannot be built up on an organization of the board which was not *de jure*; that though the other acts of the board might be valid, its election of one to an office was illegal. We have not found such a doctrine laid down by authority anywhere, and the decisions in this court are against it. In *State* v. *Tolan*, 4 *Vroom* 195, a majority of the common council of New Brunswick had been unlawfully elected, and yet this court announced its opinion that a council thus illegally constituted was competent to exercise the functions of a lawful body, although among those functions was the power of electing various city officers. In *Bownes* v, *Meehan*, 16 *Vroom* 189, the relator claimed the office of jail-keeper, and his title depended on the legal right of the board of chosen freeholders, elected in the spring of 1882, to choose his successor. This right was denied, on the ground that none of the members of that board had been lawfully elected. But the court declared that it was unimportant whether the board was constituted *de jure* or not, since it was the board *de facto*, and that as such it could exercise all the powers of a board *de jure*, including the power of appointing to office.

Our conclusion, therefore, is, that the board of chosen freeholders presided over by Mr. Govern had the right to elect and did lawfully elect the relator to the office of county collector.

The demurrer should be overruled and judgment of ouster be entered.