## THE MAYOR AND ALDERMEN OF JERSEY CITY v. JAMES S. ERWIN.

1. A *de facto* board cannot create a *de jure* officer.
2. The charter of Jersey City provided for the appointment of a single person as city attorney; two persons acted in that capacity as *de facto* officers. *Held*, that while the acts of each were valid with respect to strangers, neither could maintain a suit for the official salary.

---

On rule to show cause.

This suit was brought by James S. Erwin to recover the salary alleged to be due him as the city attorney of Jersey City, for the months of January and February, 1894. The case was tried at the Hudson Circuit, before the judge, without a jury, and the finding was for the plaintiff.

Argued at February Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and GARRISON.

For the rule, *Spencer Weart* and *William D. Edwards.*

Contra, *John L. Keller* and *Charles L. Corbin.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This suit was brought by Mr. Erwin, the plaintiff in the suit, to recover the salary which he alleges to be due to him for his services as the attorney of Jersey City.

By the institution of such an action the title of the plaintiff is put in question, as was held in this court in *Meehan* v. *Freeholders of Hudson,* 17 *Vroom* 276, 279.

Upon this subject these undisputed facts appear in the evidence, viz., that the plaintiff below (Erwin) was elected to the office just mentioned by the board of finance of Jersey City, in which body the right to fill the office was vested by the statute; that at such election four votes were cast in his favor, that being the number requisite for the legality of the proceeding, and that at the time of the transaction a *quo warranto* was pending in the Supreme Court, challenging the title of one of the members so voting, and that subsequently in that course of law a judgment resulted declaring that the member referred to was a usurper and ousting him from his position.

By the legal force of this proof it is conclusively shown that the plaintiff was appointed by a board that, so far as the function in question is concerned, had no legal authority to act in the premises.

Notwithstanding this plain defect in his title, the defendant entered upon the office of attorney of the city, and performed sundry of the duties appertaining to that post. It is also shown that during the period within which the services just mentioned were performed by the plaintiff, that Mr. Weart, who had been the preceding municipal attorney, claimed the right, at the instance of the mayor of the city, to continue in office, and accordingly proceeded to perform a considerable part of its functions. I do not find any legal justification for this continuance in office, so that according to the view now taken each of these claimants stands precisely upon the same footing; they were each clothed with official insignia and were respectively acknowledged as officers by

certain of the heads of the city departments. Under these circumstances it is plain that, in their dealings with individuals, each of these counsel was a *de facto* officer, and beyond all doubt such dealings were and are valid. The rule upon this subject is not open to the least question in this state.

But this is not the problem now to be solved, for our inquiry relates not to the standing of the plaintiff with respect to individuals, but with respect to the community itself. Claiming the salary in dispute, what is the plaintiff's *status* against the city?

On the argument it was contended that he is in this proceeding to be regarded as an officer *de jure*, but I have found no semblance of strength in that position. We have seen that the board, from which he derives his title, was illegally constituted, and in his election it acted as a *de facto* and not as a *de jure* body. Can the appointee of such a board prevail in a court of law when he sets up that he has a legal title to the office so illegitimately conferred?

The question is an important one, and has been considered with corresponding care.

The doctrine that legal validity attaches to the acts of public officers who, having an official semblance, are, in fact, destitute of all authentic title, is true only within certain limits, for it exists only so far as there is a public necessity for its prevalence, and no further. If, in the ordinary affairs of business, all persons were bound to verify the titles of public officials before they could rely upon their acts, the burthen would be intolerable. It is not too much to say that a considerable part of such business could not be transacted under the pressure of such a rule. It is always to be deprecated that the act of a usurper of office should have a legal sanction conferred upon it, but this result obtains by reason of the great public inconvenience that its rejection would introduce. To this extent and on this ground the law legalizes the act of the intruder. It is obvious, therefore, that public utility is the sole reason that can be assigned in favor of the prevalence of the doctrine, and it is thus manifest that such

doctrine is a judicial creation, and consequently it is not to
be applied in the regulation of any case that does not plainly
fall within the principle in which it has operated. Unlike
matters proceeding from legislation, in a case thus conditioned
there is no place for the maxim *voluntas stat pro ratione,* and
on this account the reason for the rule and the scope of its
operation must be coterminous.

In the light of this view it becomes conspicuous that the
general rule, acknowledged on all sides, that gives efficacy to
the acts of the officer *de facto,* cannot have the effect of invest-
ing the appointees of *de facto* boards with *de jure* titles. I
have failed to see a single reason for perpetuating the wrong
done by such an appointment, while the evils of such a prin-
ciple are serious and multiform, its immediate result being to
offer a strong incentive to usurpation, and to prevent the
public from having a voice in the selection of its own officials.
And, on the other hand, the invalidation of illegitimate titles
of this character, when properly put in issue, cannot be a
detriment to anyone but to the holders of them. The claim
of the indefeasibility of these spurious titles was pointedly
rejected in the case of *People* v. *Albany, &c.,* 55 *Barb.* 344, the
court saying "that there can be no such officer *de facto* as
against the people in an action at the suit of the people to try
the title to the office. The doctrine in respect to officers *de
facto* only applies to and in favor of third parties, and to
protect innocent parties who have trusted to the apparent title
of an officer." The rationale of this subject seems to me so
plain that it is deemed useless to discuss it further.

The question thus disposed of has not heretofore been
directly before the courts of this state for consideration, and
although there may be a few judicial expressions to be found
in the reports indicative of opinions somewhat inconsistent
with the view here taken, such expressions are mere *obiter
dicta* and as such are not entitled to much weight. The case
of *Dugan* v. *Farrier,* 18 *Vroom* 385, which was relied on by
the counsel of the plaintiff, is not in point. In that instance
the moot point was whether the organization of a board of

chosen freeholders had been illegalized by the admission, *pro hac vice*, as presiding officer of a person who had been, but who was not then, a chosen freeholder, and it was decided that this evident irregularity did not prevent the board so constituted from electing an officer *de jure*, the president of the meeting taking no part in the act.

Having thus concluded that the plaintiff cannot be accredited as an officer *de jure*, the next inquiry is as to his *status* as a suitor in the pending case.

Whether an officer *de facto* can sue for his salary is a subject that has never been judicially examined in this state. In New York, in the case of *Dolan* v. *Mayor, &c.*, 68 *N. Y.* 274, it was decided that such an action was not sustainable, and in *Stuhr* v. *Curran*, 15 *Vroom* 189, that proposition is not controverted, nor was it considered, and properly so, as it was not then *sub judice*. Nor on the present occasion have I found it necessary to examine this question, which is not, in my opinion, without its difficulties. The reason of this dispensation is that the case now in hand has certain peculiarities which are decisive of its legal merits.

As has already been shown, during the entire period in question there were two counsel, the plaintiff and Mr. Weart, each of whom claimed to be city attorney and acted as such. It seems unquestionable that, with respect to third persons, each of such counsel was an official *de facto*. Each knew that the other was occupying that *status*, and neither made any opposition to the situation. Either could have tested the right that the other claimed. So far, therefore, as the performance of official duties was concerned, each of the counsel named was the incumbent of one-half of the office, and each has precisely the same right that the other has.

Under these conditions it does not seem to me that either of these rival contestants can have any legal claim upon the public for compensation for his services. It is incontestable that if one of them is to be paid so must the other be, and thus the charge upon the city will be double the sum fixed by law as the salary of its law officer. Upon no legal prin-

ciple that I am acquainted with can the plaintiff ask to be remunerated for having put the municipality in such an unfavorable position.

It will be observed that this office, having been fashioned for a single incumbent, cannot be held by two persons at the same time. Thus, in the case of *McCahon* v. *Commissioners of Leavenworth,* 8 *Kan.* 437, it was said two persons cannot be officers *de facto* for the same office at the same time. And this seems to be the true doctrine so far as concerns such intruders and the public authorities, whatever the effect of such dual holding may be with respect to strangers dealing with either of such officers. This appears to be the view taken in *Morgan* v. *Quackenbush,* 22 *Barb.* 72. It is plainly the teaching of the common law that where an office has been created to be held by one person, two or more persons cannot hold it as tenants in common.

My conclusion is that this action is opposed to correct legal principles, and therefore cannot be sustained.

Let the rule be made absolute.

GARRISON, J., concurs.

DIXON, J. (dissenting). This suit was brought to recover the salary due to the city attorney of Jersey City, for the months of January, February and March, A. D. 1894. The trial took place in the Hudson Circuit, before the judge, without a jury, and resulted in a finding for the plaintiff, which is now before this court on a rule to show cause why it should not be set aside.

It appears that the plaintiff was appointed city attorney by a resolution of the board of finance passed December 27th, 1893, and took the oath of office on the following day. The defendant disputes the legality of this appointment on two grounds—*first*, because the statute purporting to confer upon the board the power to appoint, is unconstitutional; *second*, because the resolution was adopted by the vote of one who

was only *de facto,* and not *de jure,* a member of the board, and was vetoed by the mayor.

But under the decision of the Court of Errors, in *Stuhr* v. *Curran,* 15 *Vroom* 181, the right to the official salary does not depend upon the determination of such legal questions as are thus presented. According to that decision, the right to the fees or compensation of an office does not grow out of any contract between the government and the officer, but arises from the rendition of the official services, unless the person rendering the services has fraudulently intruded into the office.

In the present case it is not suggested that the plaintiff was guilty of fraudulent intrusion, and the evidence before the trial judge fully justified his findings of fact, that the possession of the office was surrendered by the former incumbent to the plaintiff upon his appointment, and that thereafter, during the months mentioned, he performed the duties of the position. His right to the salary was thus established.

I think the rule to show cause should be discharged.