WILLIAM RANKIN ET AL., DEFENDANTS IN ERROR, v. THE NEWARK LIBRARY ASSOCIATION AND CHANDLER W. RIKER ET AL., PLAINTIFFS IN ERROR.

Argued November 27 and 28, 1899--Decided March 5, 1900.

1. The procedure for contesting corporate elections, under section 42 of the Corporation act of 1896, is applicable to all corporations in which there are shares of capital stock held by individuals as private property, the ownership of which may be registered in the corporate books, and will entitle the holder to vote for directors of the corporation.

2. The act of April 9th, 1897, providing that in every library association every stockholder should have at least one vote for each share of stock held by him, became the absolute law of the Newark Library Association on being assented to by every stockholder therein, notwithstanding a provision in the special charter of the association, which limited the voting power of shares held in blocks exceeding five by single owners.

---

On error to the Supreme Court. For opinion of the Supreme Court, see *ante p.* 217.

For the plaintiffs in error, *Robert H. McCarter.*

For the defendants in error, *Richard V. Lindabury* and *Sherrerd Depue.*

The opinion of the court was delivered by

DIXON, J. By the special act of the legislature, approved February 19th, 1847 (*Pamph. L., p.* 69), incorporating the Newark Library Association, it was provided that in the election of directors each stockholder should have one vote for each share of stock he might hold, if not more than five, and one vote for every additional five shares, and that those persons having a majority of all the votes thus cast should be deemed elected as directors. By express reference to the "Act concerning corporations," approved February 14th, 1846 (*Pamph. L., p.* 17), this charter was made subject to alteration, suspension and repeal in the discretion of the legislature.

By a general statute approved April 9th, 1897 (*Pamph. L., p.* 189), it was enacted that every stockholder in any lyceum, library, literary or scientific association or incorporation, whether incorporated by a general law or special act of the legislature, should at each meeting of the stockholders have at least one vote for every share of stock held by such stockholder.

At an election held January 4th, 1899, for the choice of directors of the Newark Library Association, William Rankin and his associates were elected if the votes cast are counted in the mode prescribed by the charter, but Chandler W. Riker and his associates were elected if the votes cast are counted in the mode appointed by the act of 1897.

Mr. Riker and his associates having been declared by the tellers to be elected, Mr. Rankin and his associates appealed to the Supreme Court, under section 42 of the Corporation act of 1896 (*Pamph. L., p.* 277), to have set aside the alleged election of the Riker associates and to have their own election adjudged and established. This application prevailed in the Supreme Court, and the judgment of that court is now before us for review.

The plaintiffs in error first contend that the application was not authorized by the statute of 1896 because the association was not organized for the pecuniary profit of the stockholders, but solely as a charitable enterprise *pro bono publico*. But if that be conceded it affords no ground for denying the propriety of this procedure. There is nothing in the section cited which appears intended to confine the review provided by it to corporations organized for profit. Its language is broad enough to embrace all corporations in which there are shares of capital stock held by individuals as private property, the ownership of which may be registered in the corporate books, and will entitle the holder to vote for directors of the corporation. We perceive no reason for denying to this language its natural significance, and in that sense it embraces the Newark Library Association. The decision of the court *In re Bethany Church*, 31 *Vroom* 88,

on error, *sub nom. James* v. *Keys, Id.* 592, dealt with an entirely different state of affairs.

We think the application was warranted by the statute.

The next question is whether, at the election of January, 1899, it was lawful to count the votes in the manner directed by the act of 1897.

The terms of this act plainly include the Newark Library Association, and as the charter of the association was subject to alteration in the discretion of the legislature, we see no reason for thinking that, as to the corporation itself, the statute transcended the range of constitutional legislation.

But it is insisted by the applicants that, as the stock was acquired under the charter of 1847, there pertained to the ownership of each share a vested right to have each share exert so much and only so much influence in the control of corporate concerns as the charter prescribed, and that this right was so far property of the shareholder or an incident of his property that it could not be destroyed under the act of 1897.

But even if this be conceded *pro hac vice*, we nevertheless are of opinion that the act of 1897 was rightly followed in the election of 1899.

The right thus claimed is of little value. The charter and history of the association show that it was organized, not for pecuniary gain but for educational purposes, and that so long as the association was a going concern the shares of stock represented scarcely anything more than the holder's contribution to this benevolent object. The charter method of counting the votes was out of harmony with the general rule in corporate elections. In view of these circumstances, it is reasonable to expect that the stockholders would not insist upon their claim against the expressed desire of the legislature to produce uniformity, and even slight indications ought to lead to the conclusion that they have chosen not to do so.

The act of 1897 being a public statute, every stockholder is chargeable with notice of its provisions, and accordingly was bound to anticipate that at the election to be held next

after its passage the stockholders would be required to determine whether they would accept it and comply with its mandate. Hence, it should be assumed that those stockholders who felt any concern in the question were represented at that election, and that the absentees assented to whatever might be lawfully done in that regard by those in attendance.

It appears that in January, 1899, there had been issued one thousand one hundred and thirty-eight shares of the capital stock of the association. Of these, one thousand one hundred and nine shares were represented and voted upon at the election of January, 1898, being the first election held after the passage of the act of 1897, and one of the stockholders owned and voted upon four hundred and forty-three shares at that election. If the votes then cast should be counted pursuant to the charter, one set of directors would be elected ; if counted pursuant to the act of 1897, another set. The question was thus directly presented, which statute should prevail. Without a dissenting voice, the votes were counted under the act of 1897, and the directors so appearing to be chosen were declared to be elected, assumed their offices and managed the concerns of the corporation during the succeeding year.

This course of events indicates the acceptance of the act of 1897 by every stockholder of the association. The assent of those present or represented at the election of 1898 is clear. The assent of the absent holders of the remaining twenty-nine shares is shown by their implied assent to the lawful action of those who attended, and also by their acquiescence, during the year 1898, in the control of the corporation by the directors chosen pursuant to that act. Indeed, none of those absentees yet appears to dissent.

Thus, the statute which, on its enactment, became perhaps only conditionally the law of this association, the condition being the assent of all the stockholders, became on fulfillment of that condition the absolute law of the corporation. *Jackson, Governor,* v. *Walsh,* 75 *Md.* 304. The assent once given is irrevocable.

Our conclusion therefore is that the act of 1897 rightfully prevailed in the election of 1899, that Mr. Riker and his associates were then lawfully elected, and that the judgment of the Supreme Court should be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, DIXON, GARRISON, LIPPINCOTT, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 11.