BOARD OF COUNTY COMMISSIONERS OF RAMSEY COUNTY v. DENNIS M. SULLIVAN AND OTHERS.[1]

February 10, 1905.

Nos. 13,969—(8).

**Deputy County Auditor—Forged Orders.**

A large number of refundment and redemption orders were fabricated by one who assumed to act as deputy county auditor of Ramsey county,' and was permitted to do so as described in State v. Bourne, 86 Minn. 426, 432. The indorsements of the payees on these orders were forged thereon by such person, and then presented to the county treasurer, who paid to him, as the representative of the payees, either the cash or gave checks on county depositaries for the respective amounts specified therein. *Held,* in an action against the auditor and sureties on his official bond:

1. That the acting official, who had received an appointment as deputy auditor during the previous term to that which the bond applied, and continued to hold over, was a de facto officer.

2. That whether he was such de facto deputy auditor or not, the principal and his sureties were liable on the bond under the established facts, which show that the county auditor permitted the person assuming to act to retain possession of the office and act in that capacity.

3. That the negligence of the treasurer in paying cash or giving checks would not relieve the auditor and his sureties for the concurrent negligence of the principal in the bond.

Action in the district court for Ramsey county to recover from defendant Dennis M. Sullivan, former auditor of that county, and his sureties, $5,869.22 upon his official bond. The case was tried before

[1] Reported in 102 N. W. 723.

Jaggard, J., who found in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendants appealed. Affirmed.

*D. W. Lawler, Robert E. Olds,* and *Davis, Kellogg & Severance,* for appellants.

There is no evidence in the case that Walter B. Bourne was the duly appointed deputy county auditor of the county of Ramsey for whose acts the defendants, Sullivan and his sureties, were responsible, nor does the evidence disclose that he was a de facto deputy county auditor. The law is well settled that an appointment of a deputy officer continues only during the term for which his principal was chosen, and if his principal is re-elected or reappointed and begins a new term, the deputy must be reappointed likewise. Throop, Pub. Off., §§ 304, 582, 632, and cases cited; Smith v. Cansler, 83 Ky. 367; Greenwood v. State, 17 Ark. 332.

Assuming for the sake of the argument that Bourne was properly to be regarded as a deputy county auditor during the period in question, nevertheless such acts of his in the premises as would in that case be chargeable to Sullivan or the other defendants were not the proximate cause of the loss to the county. Board of Co. Commrs. of Ramsey County v. Elmund, 89 Minn. 56; Davies v. Mann, 10 Mees. & W., 545; Weisel v. Eastern Ry. Co. of Minn., 79 Minn. 245; Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 475; O'Herron v. Gray, 168 Mass. 573; State v. Ruth, 9 S. Dak. 84

*Thos. R. Kane,* County Attorney, and *O. H. O'Neill,* Assistant County Attorney, for respondent.

LOVELY, J.[a]

This action was brought to recover on the bond of the auditor of Ramsey county and his sureties for the criminal misfeasance of W. B. Bourne, who was convicted, and is now serving a term in the penitentiary for the fabrication of refundment and redemption warrants upon which he illegally obtained money and checks from the county treasurer. The cause was tried to the court, who made findings of fact holding defendants liable for the aggregate sum thereby obtained. Judgment was

[a] This case was argued and submitted before December 31, 1904.

directed therefor. A motion for new trial was denied. From this order defendants appeal.

The facts are not in dispute. Defendant Sullivan was the legal incumbent of the office of auditor from January 1, 1895, for two terms, or until January 1, 1899. The bond upon which this action was brought was given to protect the county during the second term, which commenced January 1, 1897, and was conditioned for the faithful discharge of the duties of the auditor. It was signed by Sullivan as principal, by the other defendants as sureties, and was in the form prescribed by law (G. S. 1894, § 708). During the first term of the auditor's incumbency Bourne was, on March 20, 1896, appointed deputy. The appointment was made in writing under section 715, G. S. 1894, when Bourne entered upon the duties of his office, and continued thereafter to perform duties required of the auditor in issuing warrants for the redemption of taxes under section 1610, et seq. and section 1697, G. S. 1894, as well as for redemption of lands by the owners under section 1605, G. S. 1894. He was also authorized and permitted to continue during Sullivan's second term to perform the same duties. During the last term, to which the obligations of the bond are sought to be applied, he issued a large number of such orders on the blanks furnished by the auditor and used in proper cases for that purpose, to which he attached the auditor's seal, but without the knowledge or suspicion of the auditor conceived and carried out a criminal scheme for defrauding the public treasury in the manufacture of many such orders, which he deliberately forged and issued when no money was due on any account to the persons he designated as payees. The facts with reference to these transactions are more fully set forth in the two criminal prosecutions against Bourne reviewed in this court (State v. Bourne, 86 Minn. 426, 432, 90 N. W. 1105, 1108), and need not be more particularly described. Suffice it to say that the manufactured warrants which Bourne had forged with forged indorsements thereon of the payees named were taken by him to the county treasurer, who either paid him, as the representative of the purported payees, the cash apparently due, or gave him checks for the amounts indicated on banks which were county depositaries, thus recognizing the forged orders and indorsements as genuine. The auditor was innocently deceived, likewise the treasurer, as well as the banks which paid the checks issued by the treasurer upon forged indorsements made by Bourne, the guilty party

receiving the avails of his dishonesty, for which it is now sought to hold the auditor and his sureties upon the obligations of the official bond for the benefit of the county.

Under the statute county auditors are authorized to appoint deputy auditors by a certificate in writing. Such deputies shall, before entering upon the duties of their office, take and subscribe the oath required by law, which shall be indorsed on the certificate of appointment, and filed in the office of the register of deeds. Such deputies are authorized to sign all papers and do all things which county auditors themselves may do. G. S. 1894, § 715. No such appointment was made by the auditor subsequent to that in 1896, before referred to, and it is seriously insisted that the failure of the auditor to comply with the law in this respect did not necessarily constitute Bourne a de facto officer, nor subject his principal or the sureties on his bond for the last term to liability for his fraudulent and illegal acts during that time. We can hardly regard it as a question admitting of dispute that Bourne's appointment during the first term of Sullivan's incumbency was under a proper appointment, and his continuance during the auditor's second term without a new appointment gave him what may be termed color of office, and Bourne would be regarded as an officer de facto, and, as to the public, authorized to perform the duties which made his acts colorable and injurious; hence neither the auditor nor his sureties are relieved from the consequences of such wrongful acts. County Commrs. of Ramsey County v. Brisbin, 17 Minn. 429 (451). But we do not regard it as of much importance in determining the liability of the auditor and his sureties whether Bourne, in the issuance of the fabricated warrants, was an officer de facto or not. The undisputed evidence clearly established that the duty of issuing legal warrants was committed to Bourne and performed under the sanction of the auditor, and the failure of this official to reappoint Bourne or to file the certificate of such appointment with the register cannot be made available to him or his sureties as a defense.

If the power to appoint was committed to the auditor—as it undoubtedly was—the county should not be made to suffer for his negligence in this respect. It was clearly within the purview of the conditions of the bond that the auditor should do all things necessary to be done in the faithful discharge of his official obligations; and if the auditor permitted a volunteer or unauthorized person to perform the duties which were

officially committed to him or his legally appointed deputy, a fortiori would he be liable, unless it could be said, after the execution of the bond, that he could surrender his authority, turn his back upon the performance of his trust, and knowingly allow others to do that for the protection of the public which was strictly and legally within the scope of his official supervision and control. Hence under any view this was a violation of the conditions of the bond.

It is further urged that the county treasurer was not authorized to issue and deliver to Bourne, on the fabricated warrants presented by him, either money or checks to discharge the apparent and simulated county orders, and hence in doing so the county treasurer was primarily and solely responsible. The reasoning by which this result is asserted rests upon the claim that the treasurer was bound to refuse to pay the money apparently due from the county on the manufactured warrants. He was required, it is insisted, to refuse to pay them either in cash or by check, because they were forgeries, although apparently genuine, and were calculated to mislead, and undoubtedly did so. It is said that we have decided that when these warrants were paid by the treasurer that this official was directly responsible for his negligence. Board of Co. Commrs. of Ramsey County v. Elmund, 89 Minn. 56, 93 N. W. 1054, following Board of Co. Commrs. of Ramsey County v. Nelson, 51 Minn. 79, 52 N. W. 991, where it was held that, if the treasurer was negligent in failing to ascertain whether the signatures of the payee to these forged certificates were genuine, such negligence was the immediate and proximate cause of the loss to the county, and hence he was responsible for resulting losses.

Much stress is laid upon the use of the term "proximate cause" in these decisions. In the last case the court had before it upon demurrer to the complaint the asserted, though disputed, liability of the treasurer, and it was held that for his negligence to ascertain the genuine character of indorsements in making payments he and his sureties might be liable to the same extent as a banker in the payment of checks, etc. The action against the county treasurer was argued at the same time as this appeal, and we only refer to that case to illustrate what we regard as the fallacy of defendants' position. If we should concede that the recognition by the treasurer of every one of these warrants would have rendered him liable upon the ground laid down in the case of Board of Co.

Commrs. of Ramsey County v. Elmund, supra, it does not follow that he alone would be liable. If, as we have held in the treasurer's case, the treasurer would be responsible for his own negligence, assuming that such negligence was what would properly be termed the proximate cause of the loss to the county, it does not follow upon any principle applicable to the law which fixes the responsibility for acts of negligence that the concurrent wrongs of others which directly contribute to injury and loss would not also involve the latter in the same measure of responsibility.

The term "proximate cause," when applied to the relation between master and servant, has been often defined in abstract terms which are fruitful of many subtle refinements; but a very clear test of the liability for negligence in such cases is that it exists when the person against whom the negligent conduct is charged ought to appreciate, in the exercise of reasonable judgment, that the injury complained of would follow from his acts or omissions. Hence, if we attempt to apply this term, it would seem as if there could be little doubt but that, where the forgeries of county officers required to make out orders on the treasurer for payment by that officer and expected to be honored, as they were in this case, the wrongful acts might be rightfully termed a proximate cause of the losses to the county which followed, for there can be no doubt that Bourne's fabrications were in fact the primary wrongs which led to the depletion of the county funds; and while it was said upon the complaint in the Elmund case, which charges negligence on the treasurer, that such negligence would, if found to be true, be a proximate cause of loss, this statement is not to be construed to relieve another, whose acts, as in this instance, directly led to the result which was anticipated and procured by the latter.

Order appealed from is affirmed.