FREDERICK VON NIEDA, PROSECUTOR, v. HAROLD W. BENNETT ET AL., BOARD OF COMMISSIONERS OF THE CITY OF CAMDEN, AND THE CITY OF CAMDEN, DEFENDANTS.

EDWARD G. C. BLEAKLY, PROSECUTOR, v. SAME, AND GROVER C. RICHMAN, DEFENDANTS.

ETTA C. PFROMMER, PROSECUTOR, v. SAME, AND LEO B. REA, DEFENDANTS.

LEWIS LIBERMAN, PROSECUTOR, v. SAME, AND FIRMIN MICHEL, DEFENDANTS.

JOHN H. REINERS, Jr., PROSECUTOR, v. SAME, AND MITCHELL H. COHEN, DEFENDANTS.

MEYER L. SAKIN, PROSECUTOR, v. SAME, AND EDWARD V. MARTINO, DEFENDANTS.

JOHN R. DiMONA, PROSECUTOR, v. SAME, AND JOHN J. CREAN, DEFENDANTS.

OTTO E. BRAUN, PROSECUTOR, v. SAME, AND CLAY W. REESMAN, DEFENDANTS.

THADDEUS BORZ, PROSECUTOR, v. SAME, AND WILLIAM D. SAYRS, DEFENDANTS.

Submitted January 31, 1936—Decided April 17, 1936.

Before Justices PARKER, CASE and BODINE.

For the prosecutors, *S. Rusling Leap.*

For the defendants, *Carl Kisselman.*

The opinion of the court was delivered by

PARKER, J. These nine writs of *certiorari* have their primary origin in the organization meeting of a newly elected board of commissioners of the city of Camden on May 21st, 1935; and their secondary origin, as it may be called, in a recount of the votes for one of said commissioners which resulted in his certificate of election being revoked and a certificate being issued to his opponent.

At the original organization meeting Mr. von Nieda was chosen as mayor pursuant to the practice under the Walsh act, and the various other prosecutors were appointed to the city offices as follows: viz., Mr. Bleakly to that of city counsel; Mrs. Pfrommer as overseer of the poor; prosecutor Liberman as police judge; prosecutor Reiners as "city prosecutor;" prosecutor Sakin as assistant city counsel; prosecutor DiMona as second assistant city counsel; prosecutor Braun as city clerk; and prosecutor Borz as deputy city clerk. They all qualified, and it is stipulated generally in the cause that "all of said prosecutors have occupied the offices to which they were appointed from the time of their appointment and still occupy said offices."

The city election in May, 1935, was the usual quadrennial election of five commissioners. As to the election of four there was no dispute. With respect to the fifth the contest was between the candidates Hartmann and Leonard. The city clerk, canvassing the votes as required by law, reported that Leonard was elected. He was accordingly sworn in and the meeting then organized and proceeded to fill the city offices, as already detailed. However, a recount of the votes for Leonard and Hartmann was ordered and the result of

this recount was the determination by Mr. Justice Lloyd of this court that Hartmann had a plurality of seven over Leonard. Then Leonard's certificate was revoked and Hartmann received a certificate about August 1st, 1935. The result of the recount was to change a three to two majority in the board which appointed the mayor and the other officers to a three to two majority adverse to those appointments; and the board of commissioners as thereby altered held a meeting on August 1st, 1935, and by a series of separate resolutions dismissed the several prosecutors from the offices to which they had been appointed at the meeting in May, and substituted another set of officers in their stead. These substitute officers are brought in as parties to the appropriate writs and are named above under the titles. In this situation von Nieda obtained a writ of *certiorari* to review the resolution displacing him as mayor (see *von Nieda* v. *Bennett,* 13 *N. J. Mis. R.* 782; 180 *Atl. Rep.* 401) ; and the other prosecutors severally obtained similar writs, all of which are now before us.

The controversy being over the right to a public office, the preliminary question arises whether *certiorari* is the proper remedy under the circumstances, or whether there should be a resort to proceedings in *quo warranto*. It seems clear, however, that *certiorari* is the proper remedy, as it is expressly stipulated that each and every of the prosecutors is in the physical possession of the office to which he was appointed at the meeting of May 21st. The propriety of a *certiorari* was definitely settled by the Court of Errors and Appeals in *Murphy* v. *Freeholders,* 92 *N. J. L.* 244, following and approving the Supreme Court decision in *Moore* v. *Bradley Beach,* 87 *Id.* 391.

We pass, therefore, to the merits of the dispute in the several cases. As to the case of von Nieda, he was selected as mayor at the organization meeting as already stated; and it was held by Mr. Justice Lloyd in the case of von Nieda *v.* Bennett, above cited, that that selection was irrevocable on the authority of *Woolley* v. *Flock,* 92 *N. J. L.* 65. The case of von Nieda has also an element present in all the other

cases, viz., that although the appointment of von Nieda as mayor and of the other parties as city officials was made by a board on which Leonard sat, and although Leonard was afterwards displaced, the vote of Leonard on that board was that of a *de facto* officer. This is the determinative meritorious question in all the cases before us. For the prosecutor it is argued that although Leonard was merely a commissioner *de facto* and the board because of this fact might be regarded on a three to two vote as a *de facto* board, nevertheless the action of said board in appointing officers was valid, and the officers so appointed became officers *de jure*. On the other side this proposition is vigorously denied and both sides have been adequately argued. Whatever may be said as to the apparent unfairness of the rule that a *de facto* board may appoint a *de jure* officer, we think that that rule has been definitely settled in this state by the Court of Errors and Appeals in the case of *Brinkerhoff* v. *Jersey City*, 64 *N. J. L.* 225. Prior to that decision the law seems to have been somewhat unsettled as will be seen by a reading of the opinion in that case and by an examination of the opinion in *Erwin* v. *Jersey City*, 59 *Id.* 282, and 60 *Id.* 141. Both the Brinkerhoff case and the Erwin case involved the tenure of the office of city counsel of Jersey City. Under the charter of that city the city counsel was to be appointed by a two-thirds vote of the board of finance which consisted of five members, and consequently four votes were necessary to an appointment. In both cases one of the members of the board was a *de facto* member who was afterwards ousted. In the first Erwin case Chief Justice Beasley, who wrote the opinion for the Supreme Court, held that a *de facto* board cannot create a *de jure* officer. That case was on a motion for a new trial, which accordingly took place, and on the second trial Erwin was nonsuited and carried the case to the Court of Errors and Appeals, which held that Erwin was entitled to his salary because he had done the work, but expressly passed the question whether he had been corporation attorney *de jure*. However, in the Brinkerhoff case the Court of Errors and Appeals reviewed the Erwin case at some length and at the foot of page 231 of 64 *N. J. L.*, the court says: "Upon

these principles we think that the act of the board of finance in appointing Brinkerhoff conferred upon him the right to the office of corporation counsel, and he acquired a title *de jure* which the authorities of the city were bound to recognize." It is true that both the Erwin and Brinkerhoff cases directly involved merely the right to salary but it seems plain from the report in the Brinkerhoff case that the court deemed it proper to pass definitely on the question of title *de jure* and accordingly did so. Adopting the principle laid down in that case, the circumstances in the cases before us are precisely parallel. These appointments were made by a two-thirds vote of five members, *i. e.*, four, one being afterwards declared on *quo warranto* as disentitled to his office. However, following the Brinkerhoff case, we hold that the action of the original majority in making the appointments was valid. And as the appointees have ever since been, and still are, in possession of the offices to which they were respectively appointed, they are entitled, under the rule laid down in Murphy *v.* Freeholders, to attack by *certiorari* any interference with the conduct of their offices.

The several writs bring up for review the resolutions respectively removing the several prosecutors and appointing others in their stead. These resolutions must each and all be set aside.

The question of costs incidentally arises. It does not seem to be discussed in either brief, and there was no oral argument. We incline to think that no costs should go against the city of Camden as a municipality, and there does not seem to be any good reason for imposing them on the individual members of the board of commissioners who appear to have acted in good faith. The same may well be said for the various appointees by the second board. After all, the fundamental question was, and is, whether the original appointments by the *de facto* board should stand. That is an important public question and was properly brought up for decision.

The costs are in the discretion of the court and, under the circumstances, we incline to think that none should be allowed.