THE STATE OF DELAWARE, upon the relation of Albert W. James, Attorney-General, v. HORACE L. DEAKYNE.

(*March* 23, 1948.)

CAREY, J., sitting.

*Joseph Donald Craven* for relator.

*Arthur G. Logan* (of the firm of Logan, Duffy and Boggs) and *William Poole* (of the firm of Southerland, Berl and Potter) for respondent.

Superior Court for New Castle County, September Term, 1947.

CAREY, J.:

The motion to dismiss is based upon the allegation that the averments contained in the petition do not disclose a prima facie case, and it is therefore in the nature of a demurrer requiring the Court to consider all allegations of the petition as true. More specifically, the respondent submits four reasons why the petition is insufficient: (1) The petition states insufficient facts to enable the respondent to answer; (2) Miller's right to the office of Councilman and his acts as such can not be questioned collaterally in an action to which he is not a party; (3) The words "eligible to any of the above offices" in Section 3 of the City Charter refer to qualifications at the time the term of office begins; (4) Miller continued to be at least a de facto member and his vote as such in favor of the respondent's appointment was valid. I shall discuss herein only the fourth point which is, in my opinion, not only determinative of this case, but also perhaps the most important issue raised. The questions which I shall touch upon may be simply stated thus: (1) Was Miller a de facto member of Council on April 1, 1947? (2) Can a de jure officer be created by a body which included a de facto member, whose vote is necessary to make the appointment?

The term "de facto officer" may be defined as one who is in actual possession of an office under claim and color of election or appointment and is in the exercise of its functions and in discharge of its duties, although not authorized by law to act in the official capacity he assumes. See *Waterman v. C. & I. R. Co.*, 139 *Ill.* 658, 29 *N.E.* 689, 15 *L.R.A.* 418, 32 *Am. St. Rep.* 228; *Huston v. Anderson*, 145 *Cal.* 320, 78 *P.* 626; and, generally, 11 *Words and Phrases,* Perm. Ed., 502. According to the weight of authority, a person, who has been duly elected to an office and who continues to exercise its functions after his title has been ended, is a de facto officer. *Feck v. Commonwealth*, 264 *Ky.* 556, 95 *S.W.* 2d 25; *State v. Farrier*, 47 *N.J.L.* 383, 1 *A.* 751; *Board of Commissioners v. Sullivan*, 94 *Minn.* 201, 102 *N.W.* 723; *Heyward v. Long*, 178 *S.C.* 351, 183 *S.E.* 145, 114 *A.L.R.* 1130; *Blain v. Chippewa Cir. Judge*, 145 *Mich.* 59, 108 *N.W.* 440. A good analysis of the requirements of a de facto officer is found in a case cited by the relator, towit, *State ex rel. Scanes v. Babb*, 124 *W. Va.* 428, 20 *S.E.* 2d 683. It is there pointed out that three things are necessary to constitute such an officer: (1) The office must have a de jure existence or at least one recognized by law; (2) The claimant must be in actual possession thereof; and (3) his possession must be held under color of title or authority.

In the present case, it is conceded that Miller was duly elected and qualified and served as a de jure member of Council until the date he moved beyond the City Limits. Assuming that his removal from the City ipso facto terminated his right to office that is merely another way of saying that his title to the office ceased and, since it appears that he continued to remain in actual possession thereof and to exercise its functions for several months (according to the allegations before me), it seems clear that all of the above conditions are met. The office has

a de jure existence; Miller was in actual possession thereof; and his possession was under color of authority. Indeed, until now, his right to the office was never legally questioned, according to the briefs. It is my conclusion, therefore, that Miller was a de facto member of Council on April 1, 1947. This finding is in accord with *Roche v. Jones*, 87 *Va.* 484, 12 *S.E.* 965 and *In re Oak St.*, 308 *Mo.* 494, 273 *S.W.* 105.

It is nevertheless urged by the relator that, even conceding Miller's status as a de facto member, the appointment of this respondent did not constitute him a de jure member of the Board of Water and Light Commissioners but that he became at most a de facto member subject to removal in a proper action such as this. In support of this theory, he relies upon *Von Nieda v. Bennett*, 117 *N.J.L.* 231, 187 *A.* 629, 106 *A.L.R.* 1320; *State v. Babb, supra;* and *State v. Board of Education*, 128 *W. Va.* 150, 35 *S.E.* 2d 850. The New Jersey authority discusses the matter at length and flatly holds that a de facto body can not create a de jure officer. The West Virginia cases rely upon it without entering into much discussion.

In the Von Nieda decision, the Court of Errors and Appeals overruled its former holding in *Brinkerhoff v. Jersey City*, 64 *N.J.L.* 265, 46 *A.* 170, and approved the reasoning of Chief Justice Beasley in the earlier Supreme Court case of *Jersey City v. Erwin*, 59 *N.J.L.* 282, 35 *A.* 948, and 60 *N.J.L.* 141, 37 *A.* 732, 64 *Am. St. Rep.* 584. The facts before the Court are deserving of notice. Leonard was declared elected to a City Commission by a majority of three votes over Hartmann. The latter immediately asked for a recount. While the dispute was pending, Leonard was sworn in and the Commissioners appointed a number of City Officers by a vote of three to two, Leonard voting with a majority. Upon a recount it was determined that Hartmann had received a majority of seven votes over

Leonard, whereupon Hartmann was sworn in and the Commission proceeded to dismiss the former appointees and named new ones. The Court held that the appointer and the appointee stand upon the same footing; that the contrary rule offers a strong incentive to usurpation and prevents the public from having a voice in the selection of its own officers; and that the contrary rule merely tends to lend color to the false philosophy that might is right. The Court could discover no reason why a de facto officer should be permitted to make a de jure appointment, although it recognized the necessity of giving legal validity to his acts as to the public and third persons.

In spite of a high regard for decisions of New Jersey Courts, particularly those of its highest tribunal, I am nevertheless driven by what I deem compelling considerations to disregard the ruling in the Von Nieda case. I am frank to admit that the reasoning of the New Jersey Court, from a strictly logical and theoretical point of view, is difficult to answer; yet, for reasons of practical necessity, a contrary result must be reached. In the operation of our branches of government—national, State and Municipal—there is a desperate need for honest and capable officers and employees. Courts should be slow to do anything which will make it more difficult for the people affected to employ the highest possible type of public servants. The New Jersey case seems to cast aside any consideration for this very important need and adds one more difficulty to the securing of proper employees. The rule I am asked to follow is not limited to the kind of position involved in this case, towit, gratuitous services of public spirited citizens; it would include City Managers, City Clerks, Police Commissioners, Highway Engineers, and hundreds of other public officers who fill extremely responsible positions in this State and in the political subdivisions thereof. The rule has little effect upon those people who are hired by the day, week or month,

as is generally the case with subordinate employees, because they are usually subject to discharge upon short notice at the will of the employing body. The majority of those persons who would be affected by the operation of the rule are those who are employed for a definite and more lengthy period of service, namely, the more important officeholders. The promise of a rather lengthy period of employment is a very strong inducement to a competent person. Should he be expected, before accepting such a position, to assume the burden of investigating the legal status of those who hire him, provided they are exercising the functions of their offices and are generally recognized as being the proper ones to hold the office? Public policy demands a negative answer. Such a burden tends to drive away from public service the very type and calibre of persons most needed.

Acts of a de facto officer are valid as to third persons and the public, with certain exceptions. That rule is almost universally recognized and is based upon public policy or necessity. A contrary rule would render it practically impossible for a government to operate and would lead to chaos. I can see no reason why the employment of a City Manager, for example, should be an exception to this general rule; nor do I see any reason why the appointment of a citizen to a gratuitous job as a member of a Board of Water and Light Commissioners should stand upon any different footing. They are just as much "third persons" with respect to their employment as is a building contractor hired to erect a City Hall.

I am not greatly alarmed at the possibility of usurpers or "office-grabbers" voting their political henchmen into long term offices under the application of this rule; that possibility may exist, but the danger in most instances will be found to be imaginary. I suggest that collusion or bad faith could frequently be shown in such cases which would

probably bring them within the scope of some exception to the general principle. Of course, we are not here dealing with a case where the respondent is charged with fraud, collusion, bad faith or actual knowledge of a defect in title.

There is ample authority to support the view that the general rule applies in cases like this one. Examples are the following: *People v. Staton,* 73 *N.C.* 546, 21 *Am. Rep.* 479; *State v. Alling,* 12 *Ohio* 16; *Commonwealth v. Pittsburgh,* 339 *Pa.* 173, 13 *A.* 2d 24; *Commonwealth v. Snyder,* 294 *Pa.* 555, 144 *A.* 748. Other examples are to be found in *Von Nieda v. Bennett,* 116 *N.J.L.* 320, 184 *A.* 349, 106 *A.L.R.* 1324.

My conclusion is that de facto officers can make de jure appointments, subject to certain exceptions not involved here. Assuming that Miller lost his title to his office as a member of Council by moving out of the City, he nevertheless continued to be a de facto officer and as such his vote upon the respondent's reappointment was valid. The petition before me therefore fails to make out a prima facie case against the respondent but, on the contrary, shows on its face that the respondent is properly holding the office which he claims. The rule will therefore be discharged and the petition dismissed.