In the Matter of the Application of PENNY HILL CORPORATION, a corporation of the State of Delaware, for license by store to sell alcoholic liquor not for consumption on the premises where sold, located at 405 Philadelphia Pike, Wilmington, New Castle County, Delaware.

(*March* 25, 1959.)

CHRISTIE, J., sitting.

*Michael A. Poppiti* for Appellee, Penny Hill Corporation.

*Clarence W. Taylor* for Appellants, Protestants.

· Superior Court for New Castle County, No. 565, Civil Action, 1957.

CHRISTIE, J.:

The Delaware Alcoholic Beverage Control Commission has granted a license for the sale of alcoholic liquor at a store located at 405 Philadelphia Pike, Wilmington, to Penny Hill Corporation (the applicant). Before the license was granted, eleven written protests signed by 225 residents of the area opposing the granting of such license were filed with the Commission and six of the protestants were permitted to appear before the Commission and present testimony. Six other citizens appeared and testified in favor of the proposed "package store".

The objecting parties (the protestants) have appealed the decision of the Commission.

. Although many points were argued on appeal, this opinion deals only with the conflict of interest point since the decision on that point makes it necessary to reverse the decision of the Commission.

The basic facts on which this decision is based are not in dispute. The property on which the license would permit the operation of a liquor store is owned by John M. Conway and Mary G. Conway, his wife, and Michael A. Poppiti and Mary Rose Poppiti, his wife. Mr. Conway was at the time the Chairman of the Delaware Alcoholic Beverage Control Commission (the Commission). This Commission is charged with broad powers and duties in the administration and enforcement of the Delaware laws related to the sale of alcoholic beverages. 4 *Delaware Code*, Chapters 1-11. No package store may sell alcoholic beverages without a license from the Commission.

Penny Hill Corporation holds a two year lease covering the store property. The lease provides for a rental of $150 per month and for an option to renew for a like period at the same rent. The Penny Hill Corporation has no business or other source of income other than that received from the package store. The owners of the property leased to the applicant have no direct financial interest in the applicant, but apparently they do own other real estate adjacent to the liquor store on which other commercial establishments are located.

Four of the five members of the Commission were present on the day set for the hearing of this application. Before the hearing, Mr. Conway stated that he was a part owner of the building to which the license would apply and announced he would go in the other room while the hearing was being held. Thereupon, Mr. Conway left the room and another member was elected acting chairman.

The decision of the Commission granting the license was signed by Mr. Conway, but it states that John M. Conway disqualified himself as Chairman due to the fact that he is part owner of the premises where the proposed license would be located.

Among the many arguments made on appeal is the assertion that the Chairman of the Commission benefits from or at least has an interest in the license and that the issuing of such license is therefore contrary to the statute. It is also argued that the Commission was arbitrary in the exercise of its discretion by reason of its Chairman's interest, but this argument is not supported by any proof.

There is no claim that the Chairman made any effort to conceal his interest as a part owner of the premises, or that he made any attempt to use his influence in any way in connection with the matter.

The statute under which the Commission exists provides in pertinent part:

"§ 307. *Pecuniary interest in liquor business or transactions.*

"(a) Neither the Commissioner nor any employee of the Commission may, directly or indirectly, individually or as a member of a partnership, or of any other association, or as the holder or owner of more than ten per cent of the capital stock of a corporation, have any interest whatsoever in the sale or in the manufacture of alcoholic liquors, or in any enterprise or industry in which alcoholic liquors are required.

"(b) Neither the Commissioner nor any employee of the Commission shall receive any commission or profit whatsoever from, or have any interest whatsoever in, the purchases or sales made by the Commission or by the persons authorized by virtue of this title to purchase or to sell alcoholic liquors, but no provision of this section shall prevent any Commissioner or employee from purchasing and keeping in his possession, for the

personal use of himself, the members of his family, and his guests, any alcoholic liquor which may be permitted to be purchased or kept by any individual by virtue of this title and no provision of this title shall prevent any Commissioner or employee from owning a minority interest in a corporation engaged in the manufacture and sale of denatured alcohol for industrial or other non-beverage purposes." 4 *Delaware Code*, § 307.

It must first be determined whether a part interest in property leased at a fixed rental for a fixed period to a corporation which is licensed to sell liquor is a forbidden interest under the quoted statute.

Those objecting to the license point to the strict and detailed language used in the statute and insist that any such landlord is "indirectly" interested "in the sale * * * of alcoholic liquors, or in (an) enterprise * * * in which alcoholic liquors are required" within the meaning of the statute.

The applicant, in turn, maintains that an interest in the situs of the license is not an interest in the license itself or in the license holder, that such landlord relationship is not forbidden by the statute.

I am of the opinion that the relationship which here exists is an "indirect interest" in the sale of alcoholic liquors within the statutory meaning of the term. There can be no question that the value of business or commercial property suitable for leasing to others is dependent in part upon the business of those to whom such property is leased. The owners of a small shopping center necessarily have an indirect interest in the business of each tenant to whom they rent. Among the many possible aspects of such interest are the following:

1. An enterprise which takes a lease on commercial property and has no other source of income is dependent on the success of its operations on the leased property for funds with which to pay the rent.

2. The success or failure of a particular shop in a shopping center may have an eventual bearing on the rental value of other shops in the area. Thus, a thriving package store may tend to increase or decrease the business done by neighboring stores whereas a vacant store or a run down enterprise may have a different effect on the other stores.

3. At the expiration of a lease on a package store the new rent and the other terms of a new lease are sometimes affected by the success or failure of the enterprise during the lease period and the existence of a license might tend to be a factor considered by a tenant in deciding whether to renew a lease.

4. Although one holding a liquor license may be permitted to move to another nearby location and retain the license, in the absence of such move, a license is sometimes permitted to remain with a property upon proper application by a qualified new tenant. This possibility may affect the market value as well as the rental value of property where a license is held.

5. If the same owners hold unused land adjacent thereto, an expansion of a shopping center or the sale of the land may be affected favorably or unfavorably by the existence and by the degree of success of a licensed package store.

It is impossible and unnecessary to weigh the actual or potential importance of the individual factors mentioned. Several of the factors mentioned may find no application in this particular case. As a matter of law, however, there can be no doubt that a landlord, especially one owning adjacent property, has an indirect interest in the business of any group licensed to operate a package store on his property. The fact that such interest may be so slight as to be of little economic consequence is irrelevant since the statute prohibits any interest.

It must next be determined whether or not the existence of an indirect interest not permitted under the statute invalidates the license or merely disqualifies the one holding such interest from further service on the Commission.

Applicant maintains that even if there is an interest in one of the Commissioners forbidden under 4 *Delaware Code*, § 307, the statute merely states the qualifications necessary for the holding of office and does not delineate any result if a Commissioner becomes disqualified. The applicant argues that if the Court holds Mr. Conway is disqualified as a member of the Commission, nevertheless, the license is valid on the basis that Mr. Conway was a *de facto* officer. Applicant cites the following authority for this proposition:

"When the appointing power has made an appointment of a person who has not the qualifications required by law, the appointment is not, therefore, void. The person appointed is *de facto* an officer; his acts in the discharge of his duties are valid and binding. He may be guilty of usurpation and may be punished for acting without being qualified, but the peace and repose of society require that his official acts so far as others are concerned should be valid. This is true of all officers. One who becomes disqualified to hold office while in office but continues to exercise the duties of office is a *de facto* officer." *McQuillin on Municipal Corporations*, Volume 3, Page 381.

Applicant also cites the Delaware case of *State ex rel. James v. Deakyne, Del. Super*, 1948, 5 *Terry* 217, 58 *A*. 2d 129, to the same effect.

The protestants, on the other hand, maintain that the statute clearly defines a matter of public policy and that the license here granted is invalid since it is contrary to such public policy. *State ex rel. Smith v. Bowman*, 1914, 184 *Mo. App.* 549, 170 *S. W*. 700.

Protestants also cite a number of cases where Courts have construed statutes forbidding members of municipal councils to have an interest in any contract with the municipalities. In such cases it has been held that where a statute forbids an act and imposes a penalty, a contract which constitutes a performance of that act is void even though the statute is silent as to its effect upon such a contract. *State ex rel. Streif v. White, Mo. App., St.*

*Louis* 1926, 282 *S. W.* 147; *Bergeron v. Jackson,* 1920, 94 *Vt.* 91, 108 *A.* 912.

Protestants rely also on the case of *Nunemacher v. City of Louisville, Ky. App.* 1895, 98 *Ky.* 334, 32 *S. W.* 1091, where the Court discussed at length the effect of a statute which forbade members of the City Council from being directly or indirectly interested in a contract with the city. In commenting upon the effect of the statute, the Court stated:

"It treats solely of the eligibility of members of the general council, and does not, in terms at least, declare void a contract in which a member, in spite of the section, may be interested. A rigid adherence, therefore, to the letter of the statute would lead us to hold that the making of such a contract would only render ineligible the interested member. Manifestly, such a construction falls far short of effectuating the purpose of the lawmakers. It is a matter of small concern, comparatively, who may or may not retain a seat in the council, but the public is vitally interested in the execution of contracts of the city. If the retiring and interested member, upon becoming ineligible, leave behind him an enforceable contract, he is permitted to accomplish what he may have obtained his seat in the council for. It is proper to observe here that no suggestion is made that the member of the council who was in the pay of the contracting company had ought to do with making the contract involved in this case. That tribute to his integrity is paid by council assailing the contract. But it is not contended that this fact affects the question. In our opinion, the effect of this section is to render void contracts between the city and any person who is a member of the council, or between the city and any corporation which has a member of the council for one of its officers or paid employés. When so construed, it becomes in fact merely declaratory of common-law principles on this subject."

The authorities cited by the applicant deal only with the validity of the acts of a *de facto* officer insofar as such acts relate to matters unrelated to the grounds upon which the *de facto*

officer was disqualified to hold office. The law cited does not help the applicant since the license here in question itself falls within the prohibition of the statute.

Most of the cases cited by the protestants are more nearly parallel but are also distinguishable. It is obvious that the law surrounding the granting of public contracts contrary to a criminal statute would not necessarily correspond to the law surrounding the granting of a license to conduct a liquor store contrary to a statute containing no criminal provision.

The key to the application of this statute is found not in the general law but in the statute itself. The obvious purpose of the statute is to avoid any tie-in between the manufacture or sale of liquor and the officers or employees of the Commission, and to avoid any conflict of interest between an official's public duty and his private business interests. If an indirect interest in a license merely disqualifies the Commissioner holding such interest, the real purpose of the statutory restriction would be largely circumvented. The terms of the statute are strict. They clearly indicate a strict interpretation and application thereof. I am of the opinion that the Commission is without authority to issue any license to an applicant in which a member of the Commission has an interest forbidden by 4 *Delaware Code*, § 307.

The fact that the interested Commissioner took no part in the granting of the license and exercised no influence in connection therewith does not assist the applicant. The license is invalid because of the existence of the forbidden interest. Upright conduct and high integrity on the part of the one holding such interest does not wipe out the interest and cannot cure the defect in the license.

I conclude as a matter of law that the Commission erred when it issued a license to the applicant.

An order will issue remanding the proceedings to the Commission with instructions to lift the license.