# HARRY THOMAS v. WISCONSIN CENTRAL RAILWAY COMPANY.[1]

### July 23, 1909.

### Nos. 16,185—(199).

**Negligence of Independent Contractor.**
Where a master places upon his premises in the immediate vicinity where

[1]Reported in 122 N. W. 456.

his servants are engaged at work an independent contractor for a specific purpose, still retaining the general control of the premises and continuing the conduct of his own business, his legal obligation to provide his servants with a safe place in which to perform their duties requires of him the exercise of reasonable care to protect them from the negligence of the independent contractor.

### Duty to Provide Safe Place.

The obligation of the master to provide his servants a safe place extends to the portion of his premises on which they are required to work and such other places thereon as they are expressly or impliedly invited and permitted to use.

### Master and Servant — Noon Hour.

The relation of master and servant, in so far as involves the obligation of the master to protect his servant while rightfully upon his premises, is not suspended during the noon hour, when the master expects, and expressly or by fair implication invites, the servant to remain upon the premises in the immediate vicinity of the work.

Action in the district court for St. Louis county to recover $25,000 for personal injuries. The case was tried before Dibell, J., and a jury which rendered a verdict in favor of plaintiff for $7,733. From an order denying defendant's motion for judgment notwithstanding the verdict but granting its alternative motion for a new trial, defendant appealed and plaintiff served notice of appeal from the order granting a new trial. Affirmed.

*Crassweller & Crassweller,* for appellant.

*Samuel A. Anderson* and *Warner E. Whipple,* for respondent.

BROWN, J.

Action to recover for personal injuries, in which plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial. The trial court granted a new trial, but denied that part of the motion demanding a final judgment for defendant. The only question presented on this appeal is, therefore, whether in any view of the evidence plaintiff has a cause of action against defendant.

The facts are as follows: Defendant is a railroad corporation, or-

ganized under the laws of the state of Wisconsin, and as such operates a line of railroad from Chicago, through Wisconsin, to Duluth and other points in this state. At the time of the accident here complained of it was engaged in constructing certain shops and yards at South Superior, in the state of Wisconsin. The buildings were located near the railway tracks, and were being constructed by a firm of independent contractors, who employed in and about the work some fifty or more men. Defendant in its own behalf was engaged in the same locality in grading and excavating for its roadbed, and also employed about fifty men. One Roberts was engaged as an independent contractor in sinking a well within one of the buildings, and employed in his work an old engine and boiler, which, as will presently be mentioned, exploded, killing several of defendant's employees. Plaintiff, with other of defendant's servants, was engaged in excavating a roadway immediately adjacent to the building in which the well was located, on the east side thereof, and by means of wheelbarrows conveyed the excavated material to a point northwest from the building a distance of about seventy-five feet. The boiler used by Roberts in sinking the well was located on the west side of this building and was under his exclusive control; at least, the evidence does not show that defendant exercised any supervision in respect to its operation. However, defendant had not surrendered control of its premises to Roberts, or the other contractors engaged in the construction of the buildings, but remained in possession thereof, and with its employees was engaged in the track work heretofore mentioned. Roberts was upon the premises solely for the purposes of the work intrusted to him. The railroad employees were under the control of a general foreman in charge of the track work, and were subject to his orders and directions. The men were given but a half hour for a midday intermission, and were expected to, and did, take their luncheon with them and eat it upon the premises in the immediate vicinity of their work. The ground upon which the work was being carried forward was swampy or marshy, and at the noon hour the employees found a convenient dry knoll or spot of ground upon which to kindle a small fire for the purpose of heating their coffee, and upon which to rest while partaking of their lunch. Though the foreman testified that a railroad car

had been provided for this purpose, he also testified that it was not used by all the men, who, with his knowledge, were in the habit of going upon the premises wherever a dry place could be found, instead of going to the car. Plaintiff testified that he knew nothing about the car, and was not informed that it had been furnished for the convenience of the men. Roberts' boiler, used in the well-digging operations, was located upon the only dry spot of ground to the west of the building, and on the day of the injury to plaintiff he and other employees of defendant repaired to that place for lunch. Before they had finished, the boiler exploded, killing several of the men, and severely injuring plaintiff.

Plaintiff's theory of the action at the trial was that defendant was under legal obligations to provide its employees, including plaintiff, with a reasonably safe place in which to do their work, and to protect them from dangers unknown to them while rightly upon its premises, and that it failed in the performance of this duty, and is liable for all injuries sustained in consequence of its failure. The trial court sent the case to the jury upon this theory, and they found generally in plaintiff's favor.

It is contended by defendant (1) that the evidence conclusively shows that Roberts, the well digger, was an independent contractor, over whom it had no control, either respecting the manner of doing his work or the instrumentalities used; and (2) that plaintiff, in going upon the spot of ground where the boiler was located, did so for his own convenience, without any express or implied invitation from defendant, and was not then a servant of defendant, but a mere licensee, and that defendant owed him no active vigilance for his protection.

1. We are unable to sustain either of these contentions. Defendant was under legal obligation to provide plaintiff, its servant, a reasonably safe place in which to do his work, or, as more accurately expressed, to exercise reasonable care to so provide. This necessarily included protection from unknown danger while rightfully upon defendant's premises, and such as reasonable prudence on defendant's part would have guarded against. It could not avoid the performance of that duty by delegating it to others, nor shield itself by sending upon its premises, still under its general control, and where its servants

were employed, an independent contractor, with authority to set up and operate in the vicinity of its own workmen dangerous instrumentalities. In such case the performance of the master's obligations to his servants requires that he exercise reasonable care in reference to the work of the independent contractor, to the end that the place provided for his own servants may not become unsafe or dangerous. Akin v. Lake Superior Consol. Iron Mines, 103 Minn. 204, 114 N. W. 654, 837; Aldritt v. Gillette-Herzog Mnfg. Co., 85 Minn. 206, 88 N. W. 741; Rait v. New England Furniture & Carpet Co., 66 Minn. 76, 68 N. W. 729; Klages v. Gillette-Herzog Mnfg. Co., 86 Minn. 458, 90 N. W. 1116; Toomey v. Donovan, 158 Mass. 232, 33 N. E. 396.

As remarked by the court in The Magdaline (D. C.) 91 Fed. 798: "A master may not place his servant at a work made dangerous by the nature of the work of other servants, or persons performing work under contract, without due effort to furnish adequate protection, and, when injury arises, escape upon the plea that, but for the negligence of a co-servant or third person employed on the premises, the injury would not have happened. A servant may expect that his master will not surround him with dangerous agencies, * * * whether they are in charge of the master's servants or of an independent contractor." See also Burnes v. Kansas City, 129 Mo. 41, 31 S. W. 347; Sackewitz v. American, 78 Mo. App. 144; Woodman v. Metropolitan, 149 Mass. 335, 21 N. E. 482, 4 L. R. A. 213, 14 Am. St. 427.

The duty to provide a safe place to work is absolute, nondelegable, and it is clear that in a case like that at bar the master cannot shield himself by the plea that the place provided by him was made dangerous and unsafe by his independent contractor. In a situation like the present, installing an independent contractor for a certain specific purpose, to be performed in and about the place provided for his own servants, still retaining the general control over his premises, the master must either suspend his own work or take active measures to protect his servants from the negligence of the independent contractor. In no other way can he perform his duty to his own servants respecting the obligation to furnish them a reasonably safe place to work. The authorities may be somewhat conflicting upon this proposition;

but the views expressed are, it seems to us, sustained by the plainest principles of the law of master and servant.

It is further urged in this connection that there is no evidence that defendant knew or had reason to believe that the contractor's boiler was unsafe or defective. But this clearly is no answer to the charge of neglect of duty. Had this particular boiler been operated by defendant, its obligation to plaintiff would have required an inspection thereof and an exercise of reasonable care to keep it in condition suitable for its work. 4 Thompson, Neg. 3926. Though the boiler was not an instrumentality furnished by defendant for use by its employees, it permitted it to be placed upon its premises, where its servants were at work, thus, in its defective condition, rendering the place of work unsafe, and the duty of inspection existed. The evidence shows that the boiler was old and out of repair, extremely dangerous to the life and limbs of those working in its vicinity, and that a casual inspection thereof would have disclosed this condition to defendant. There is no claim that defendant ever attempted to inspect it, or otherwise protect its servants from danger of injury from that source. The evidence made this a question for the jury.

2. But it is further claimed that plaintiff was not at the place provided for the performance of his work, but, on the contrary, was at the boiler for his own convenience; that he was not a servant of defendant at the time, but a mere licensee, and entitled to no protection as a servant. A large number of cases are cited in support of this contention, and, if sound, it disposes of the case adversely to plaintiff's right of action. The position, however, does not meet with our view of the law. The authorities are hopelessly at variance upon this point, though, as we believe, the weight of reason is opposed to the view of defendant. The authorities are collected in a note to Taylor v. Bush, 12 L. R. A. (N. S.) 853.

In the case at bar it appears that defendant's employees were given a half hour for the noon rest; that each employee brought his luncheon with him and ate it upon defendant's premises in the vicinity of the work; that the men were expected to remain upon the premises, and did so remain with the knowledge, consent, and upon the implied invitation of defendant, picking out such dry places upon the premises

as could be found, lighting a small fire, heating their coffee, and partaking of their lunch. These facts appear, not only from the testimony of plaintiff's witnesses, but also from the testimony of defendant's foreman in charge of this particular work. Under such circumstances a majority of the courts hold that the relation of master and servant remains intact, extending to the servants the same rights as when actually engaged in their work. Cleveland v. Martin, 13 Ind. App. 485, 41 N. E. 1051; Blovelt v. Sawyer [1904] 1 K. B. 271; Heldmaier v. Cobbs, 195 Ill. 172, 62 N. E. 853; Olsen v. Andrews, 168 Mass. 261, 47 N. E. 90; Boldt v. New York, 18 N. Y. 432. Numerous other cases to the same effect are cited in the note referred to.

The case of Olson v. Minneapolis & St. L. R. Co., 76 Minn. 149, 78 N. W. 975, 48 L. R. A. 796, is different in its facts from that at bar, and is not in point. In that case plaintiff, a brakeman, left his caboose at the end of his journey, about 2:50 p. m., went to his boarding place, and at about seven o'clock in the evening returned to the yards in search of the caboose, in which he had left his clothing, and he was injured. It was held properly that the relation of the master and servant did not exist at the time he was looking for his clothing. There was neither express nor implied permission to go upon the defendant's premises for that purpose.

Neither is the case of Benson v. Chicago, St. P., M. & O. Ry. Co., 78 Minn. 303, 80 N. W. 1050, in point. There the railroad employees had ceased their work and were returning to their boarding cars on hand cars furnished by the company, and plaintiff therein was injured by the reckless conduct of those in charge of one of the cars in propelling it violently against a preceding car. The court held that during the time the men were proceeding to their boarding place on hand cars they were, "as between themselves," not servants of the company, and there was no liability for the negligent conduct of those who caused the accident complained of. Such is not this case. Here the men were still upon the premises of defendant at their place of work, with its knowledge, consent, and implied invitation, and within the authorities cited, as well as upon principle, they were servants, and not licensees, in so far as involves defendant's obligation to protect them. Parkinson v. Riley, 50 Kan. 401, 31 Pac. 1090, 34

Am. St. 123; Rosenbaum v. St. Paul & D. R. Co., 38 Minn. 173, 36 N. W. 447, 8 Am. St. 653.

We have examined the Wisconsin cases cited by defendant, and find none of them in their facts at all like the case at bar. A careful reading of the opinions of that court sustains the general view here expressed. The trouble with the particular cases was that there was no express or implied invitation to the servants to remain upon the master's premises, or to be thereon, at the time or place of injury. This disposes of the case.

Order affirmed.