# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

## GEORGE S. GILLESPIE v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 12, 1913.

Nos. 18,238—(111).

**Notice of use of explosives.**

1. Evidence *held* sufficient to sustain a finding charging defendant railroad company with notice of excavating operations being conducted on and near its right of way by another company, through a subcontractor, and also of the manner in which the work was being done, including the use of dynamite, so as to impose upon defendant the duty of warning plaintiff, its employee, before putting him at work on a semaphore pole located dangerously near the place where the blasting was going on.

**Verdict — evidence.**

2. Jury *held* justified in finding that plaintiff's injury from a blast followed in natural sequence from defendant's breach of duty in failing to warn him.

**Cause and effect.**

3. The causal connection was not broken by the fact that the excavation workmen, though knowing of plaintiff's presence, negligently failed to warn him before exploding the blast by which he was injured; such negligence

[1] Reported in 144 N. W. 466.

Note.—The authorities on the question of the master's duty to warn servant engaged in blasting of dangers therefrom are collated in a note in 19 L.R.A.(N.S.) 997. And upon the duty of the master to warn or instruct servant, generally, see extensive note in 44 L.R.A. 33.

124 M.—1.

being a mere incident to that of defendant, or, at most, a mere contributing cause.

**Omission to charge jury.**

4. Failure of court, in instructing the jury, to call attention to the distinction between knowledge and notice, as imposing upon defendant the duty to warn, *held* not reversible error, in absence of request by defendant.

**Damages.**

5. Damages *held* not so excessive as to indicate passion or prejudice on the part of the jury.

**Reduction of verdict.**

6. Verdict as reduced by trial court sustained.

Action in the district court for St. Louis county to recover $20,000 for personal injury received while in the employ of defendant. The answer denied that plaintiff sustained any injury whatever by reason of any negligence on the part of defendant, and alleged that plaintiff claimed his injury was caused by the negligence of another party or parties, and upon information and belief it alleged that plaintiff demanded compensation for the injuries from another, and thereafter for a valuable consideration to him in hand paid plaintiff compromised and adjusted all claims for damages on account of the injuries. The case was tried before Dibell, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict of $11,375 in favor of plaintiff. Defendant's motion for judgment notwithstanding the verdict was denied and its motion for a new trial was granted, unless plaintiff consented to a reduction of the verdict to $9,000, which consent was given. From the order denying its motion for judgment notwithstanding the verdict and granting its motion for a new trial unless plaintiff consented to a reduction of the verdict, defendant appealed. Affirmed.

*M. L. Countryman* and *Baldwin & Baldwin,* for appellant.

*Samuel A. Anderson* and *Warner E. Whipple,* for respondent.

PHILIP E. BROWN, J.

Appeal by defendant from an order denying its alternative motion after verdict for the plaintiff in an action to recover damages for personal injuries.

The accident occurred on January 25, 1912. Then, and previously, plaintiff was employed by defendant in keeping its semaphore appliances in repair. On the day stated, and for about three months prior thereto, another railway company was engaged, through a subcontractor, in excavating a roadbed across defendant's right of way, and to facilitate the work defendant had elevated its tracks for some 500 feet. In the course of the excavation operations dynamite was frequently used to blast out the earth. The charges were uncovered when fired, and the débris was thrown upon defendant's right of way and land adjacent thereto. The custom was, before firing, to warn the workmen and to flag defendant's trains. On the day in question, and for a day or two previously, defendant's bridge crew was working on its elevated tracks. One of defendant's semaphore poles, about 32 feet high, with a platform near its top, was located some 250 feet south of the southerly point of defendant's track elevation. While plaintiff was engaged, under order of his immediate superior, a signal supervisor, in putting this semaphore in working condition, a blast was set off by the subcontractor's employees, close to the end of the track elevation nearest the semaphore pole, but not on defendant's right of way. It was exploded in the ordinary way, with no unusual results, except that plaintiff, who was on the pole, was struck by flying material and injured. Plaintiff's superior officer was unaware of the blasting operations referred to, and there was no evidence that any of defendant's officers or managing agents had knowledge thereof. There was evidence sufficient to sustain a finding that plaintiff had no knowledge or warning of the blast which occasioned his injury, or that any blasting had been or was being done, though it appeared that shortly before the blast was exploded an excavation workman was sent to notify him, and did notify his helper on the ground.

1. On the issue of negligence, the court submitted the cause to the jury, solely upon plaintiff's claim that defendant was negligent in failing to give him warning or information as to the blasting operations before putting him at work on the semaphore pole. Defendant contends that it was under no duty either to warn plaintiff of this danger, which it insists was unknown to it, or of trespasses

on the part of strangers. This contention may shortly be disposed of. The master's duty to warn the servant of dangers not naturally incident to the employment, including those arising from extraneous sources, and which the former should in the exercise of reasonable care and diligence know of, and of which the latter has no knowledge or notice, we consider settled. See 26 Cyc. 1165, 1172; 3 Labatt, Master & S. (2d Ed.) § 1146. See also Guirney v. St. Paul, M. & M. Ry. Co. 43 Minn. 496, 46 N. W. 78, 19 Am. St. 256; Galloway v. Chicago, M. & St. P. Ry. Co. 56 Minn. 346, 57 N. W. 1058, 23 L.R.A. 442, 45 Am. St. 468; Lane v. Minnesota State Ag. Soc. 62 Minn. 175, 64 N. W. 382, 29 L.R.A. 708; Id. 67 Minn. 65, 69 N. W. 463; Thomas v. Wisconsin Central Ry. Co. 108 Minn. 485, 122 N. W. 456, 23 L.R.A. (N.S.) 954; Baxter v. Roberts, 44 Cal. 187, 13 Am. Rep. 160; Bradburn v. Wabash R. Co. 134 Mich. 575, 96 N. W. 929; Landry v. Great Northern R. Co. 152 Wis. 379, 140 N. W. 75; Holshouser v. Denver Gas & E. Co. 18 Colo. App. 431, 72 Pac. 289; Kliegel v. Aitkin, 94 Wis. 432, 69 N. W. 67, 35 L.R.A. 219, 59 Am. St. 901; O'Connor v. Armour Packing Co. 158 Fed. 241, 85 C. C. A. 459, 15 L.R.A. (N.S.) 812, 14 Ann. Cas. 66. The law imposes this duty to warn on the master absolutely for the protection of the servant from injury, and he must either perform it personally or see that it is performed by a representative. 2 Dunnell, Minn. Dig. § 5868. That these blasting operations involved risks beyond those assumed by plaintiff, increased them, and rendered the performance of his duties extra-hazardous, is self-evident; and the extensive and protracted nature of the contractor's work, the measures taken by defendant to prepare for it, the frequency of explosions, and the extent to which débris was scattered thereby, must be held sufficient at least to sustain a finding charging defendant with notice not only of the operations themselves, but of the manner in which they were conducted. The court properly submitted the issue of negligence so made to the jury.

2. Were the proofs sufficient to uphold the finding of the jury that defendant's omission to warn plaintiff was the proximate cause of his injury? Defendant contends: "Plaintiff's work required him to be on or about the semaphore pole at the time of the accident.

A general warning would avail nothing. Had he been aware of the blasting, he would still have been obliged to rely upon being notified from time to time of the intention to fire a blast." This proposition wholly ignores the fundamental basis of the duty to warn. In a recent Wisconsin decision it is said:

"There always may be latent dangers attendant upon the usual conduct of a business of whose existence it is the duty of the master to warn the servant so that the latter can decide for himself, after being so warned, whether or not he will assume them by remaining in the employment." Ruck v. Milwaukee Brewery Co. 144 Wis. 404, 129 N. W. 414. See also Boin v. Spreckles Sugar Co. 155 Cal. 612, 102 Pac. 937.

So in the present case, plaintiff should have been warned before being sent to this place of danger, in order that he might have elected whether to remain in or quit the employment. No such alternative was given him at any time. Had he received such warning its effect would have been material only upon assumption of risk or contributory negligence.

Plaintiff testified:

"Q. Had you known that the defendant company, or any of its officers, warned or notified you that they were using powder or dynamite down in that vicinity what would you have done?

"A. I would have went to those men and told them to notify me in case blasting was going to be done.

"Q. Had you known there was blasting going to be done there, would you have remained upon that semaphore pole?

"A. No, sir; I would not."

Upon this testimony, and mainly upon statements of principles excerpted from 2 Dunnell, Minn. Dig. § 7000, defendant insists that "plaintiff's injury was a direct consequence—not of his ignorance of the blasting operations in general, not of defendant's failure to warn him concerning the same—but solely of the failure on the part of Baxter's men in charge of the blasting to notify him that the particular charge by which he was injured was about to be fired. And therefore defendant, though failing to warn plaintiff of the blasting, is not the cause of, nor answerable for, his injury." Thus,

in effect, we are asked to hold as a matter of law that defendant, notwithstanding its neglect of duty, is not liable, because plaintiff testified that, had he known of the blasting operations, he would have taken one of the obviously necessary steps to protect himself, assuming, of course, that he would not have quit the employment. Such a result would, as we have indicated above, have to be reached, if at all, under the doctrine of assumption of risk or contributory negligence, which, in view of the absence of any warning or notice to plaintiff from any source, cannot here be invoked. Would it not follow, by parity of reasoning, if defendant prevails in this contention, and plaintiff should subsequently sue the subcontractor, and on the trial testify that had he been warned by defendant he would have refused to go to the semaphore pole, defendant in that action would be relieved from liability on the ground that this defendant's negligence was the proximate cause of the injury?

A holding in accordance with defendant's contention would emasculate the doctrine of duty to warn, and in the present case this would be done upon purely conjectural grounds. Plaintiff says he would have arranged for warning. What else would he have done? What kind of warning would he have demanded? Who can say that the same result would have followed had he actually conferred with the subcontractor, or that in such case he would still have been injured? Indeed, is there anything in the record reasonably tending to show that plaintiff, if he had been fully warned by defendant, would not have even quit the employment or else have refused to go to the semaphore pole in question? It should be remembered that the master's duty is not merely to advise the servant of existing conditions, but to see to it that he comprehends the risk and understands the danger. 3 Labatt, Master & S. (2d Ed.) § 1147; 1 Street, Foundations of L. L. 166–169. As said in The Magdaline, 91 Fed. 798, 800, quoted with approval in Thomas v. Wisconsin Central Ry. Co. 108 Minn. 485, 489, 122 N. W. 456, 23 L.R.A. (N.S.) 954:

"A master may not place his servant at a work made dangerous by the nature of the work of other servants, or persons performing work under contract, without due effort to furnish adequate protection, and, when injury arises, escape upon the plea that, but for the

negligence of a coservant or third person employed on the premises, the injury would not have happened. A servant may expect that his master will not surround him with dangerous agencies, or expose him to their operation, whether they are in charge of the master's servants or of any independent contractor."

The case under consideration is analogous to one involving violation of a statutory duty as negligence, of which it has been said:

"Where a statute or municipal ordinance imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty he is liable to those for whose protection or benefit it was imposed for any injuries of the character which the statute or ordinance was designed to prevent." Perry v. Tozer, 90 Minn. 431, 438, 97 N. W. 137, 140, 101 Am. St. 416.

No distinction can be drawn between the effect, in this connection, of breaches of common law and statutory duties, and an imputation of causal connection in such cases cannot be destroyed by mere speculation or conjecture. Aside, then, from the question of whether the subcontractor's negligence is to be deemed an independent, intervening cause, we think it clear that the jury were justified in finding plaintiff's injury to be a consequence which followed in natural sequence from defendant's negligence, which latter, therefore, must be held to be the proximate cause thereof. Christianson v. Chicago, St. Paul, M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640; Wallin v. Eastern Ry. Co. of Minn. 83 Minn. 149, 157, 86 N. W. 76, 54 L.R.A. 481.

3. Were plaintiff's injuries due to the interposition of an entirely independent and unrelated cause, sufficient of itself to stand as the cause of the mischief? See 2 Dunnell, Minn. Dig. § 7000, relied on by defendant. Such a cause must be one which not only comes between the original cause and the injury in point of time, but must turn aside the natural sequence of events and produce a result which would not otherwise have followed. City of Winona v. Botzet, 169 Fed. 321, 329, 94 C. C. A. 563, 23 L.R.A.(N.S.) 204. Or, as stated by Gilfillan, C. J., in Purcell v. St. Paul City Ry. Co. 48 Minn. 134, 138, 50 N. W. 1034, 16 L.R.A. 203:

"The new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and

adequate to bring about the injurious results. Whether the natural connection of events was maintained or was broken by such new, independent cause, is generally a question for the jury." See also Illinois Cent. R. Co. v. Siler, 229 Ill. 390, 82 N. E. 362, 15 L.R.A.(N.S.) 819, 11 Ann. Cas. 368; Milwaukee & St. P. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. ed. 256.

How can it be said that failure of the excavation workmen to notify plaintiff interrupted the natural sequence of events beginning with defendant's neglect of duty or checked the causal momentum of its negligence? Did the intervening circumstance produce a result which would not otherwise have followed? Plaintiff would have been injured just the same, if the excavation workmen had been ignorant of his presence. How, then, can their knowledge and futile attempt to warn him constitute a breaking of the causal sequence? True, he might not have been injured had he received warning of the particular blast in question; but this, at most, would bring the case within the rule relating to mere incidents in the natural sequence from the first wrongful act, or else within the doctrine of concurrent negligence, neither of which would relieve the original wrongdoer. See Baltimore & P. R. Co. v. Reaney, 42 Md. 117, 137. Viewed as an incidental matter, the subcontractor's negligence was a mere failure to interrupt the natural course of events started by defendant's putting plaintiff at work on the semaphore pole without warning as to surrounding conditions. Moon v. Northern Pac. R. Co. 46 Minn. 106, 48 N. W. 679, 24 Am. St. 194; Teal v. American Mining Co. 84 Minn. 320, 87 N. W. 837; Board of Co. Commrs. of Ramsey County v. Sullivan, 94 Minn. 201, 206, 102 N. W. 723; Thomas v. Wisconsin Central Ry. Co. 108 Minn. 485, 489, 122 N. W. 456, 23 L.R.A.(N.S.) 954; Neidhardt v. City of Minneapolis, 112 Minn. 149, 127 N. W. 484. Considered otherwise, the negligence of defendant and that of the subcontractor constituted contributing causes of the injury, for which, therefore, plaintiff "may recover damages from the one guilty of the first wrong, notwithstanding the succeeding negligence of the other united in producing" it. See concurring opinion of Mitchell, J., in Martin v. North Star Iron Works, 31 Minn. 407, 410, 18 N. W. 109. See also Johnson v. Northwestern Tel. Exch. Co. 48 Minn. 433, 51

N. W. 225; Campbell v. City of Stillwater, 32 Minn. 308, 20 N. W. 320, 50 Am. Rep. 567; Moon v. Northern Pac. R. Co. supra; Teal v. American Mining Co. supra; Butler-Ryan Co. v. Williams, 84 Minn. 447, 453, 88 N. W. 3; Coleman v. Minneapolis St. Ry. Co. 113 Minn. 364, 129 N. W. 762; Froeberg v. Smith, 106 Minn. 72, 75, 118 N. W. 57; Landry v. Great Northern R. Co. 152 Wis. 379, 140 N. W. 75, 77; 36 Am. St. 845, note.

4. What has been said in the first subdivision of this opinion disposes of defendant's contention that the court erred in giving the following instruction, the portion thereof particularly objected to being italicised:

"It is for you to find whether the defendant, knowing what it did about the Soo work being done, *the manner in which it was being carried on,* and of its dangers to the men on the road, was negligent in failing to give the plaintiff a warning or information as to the blasting before putting him at his particular work." No objection or exception was taken on the trial; and if defendant desired the jury's attention called to the distinction between notice and knowledge, request should have been made.

5. The verdict returned was for $11,375, which was reduced by the trial court to $9,000. It is claimed that this was so excessive as to indicate passion or prejudice; and further, that as reduced the verdict is still excessive. The accident caused loss of sight in one eye, fracture of the jaw bone, permanent disfigurement of the face, the teeth remaining out of alignment and pain being suffered a year after the accident and up to the time of trial, and usual physician's expenses and loss of time ensued, but no decrease in earning capacity. No arbitrary standard can be fixed for measuring damages for such injuries. Intelligent jurymen might easily differ in arriving at a compensatory sum, and we find nothing to indicate passion or prejudice. Whether the verdict as reduced should be sustained depends largely upon whether the trial court abused its discretion in the matter. Gibson v. Chicago Great Western R. Co. 117 Minn. 143, 148, 134 N. W. 516, 38 L.R.A.(N.S.) 184, Ann. Cas. 1913C, 1263. We find no ground for interference.

Order affirmed.