SAN ANTONIO & A. P. RY. CO. v. BLAIR.*
(No. 5626.)

(Court of Civil Appeals of Texas. San Antonio. March 1, 1916. Rehearing Denied March 22, 1916.)

1. MASTER AND SERVANT ⬌278(1)—INJURIES TO SERVANT — ACTIONS—EVIDENCE—SUFFICIENCY.

In an action for the death of a railroad employé from injury received when a trunk was thrown over or slipped from a pile of trunks on a platform and struck him, evidence *held* to warrant a finding that the porter handling the trunks was negligent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 957; Dec. Dig. ⬌ 278(1).]

2. EVIDENCE ⬌77(5)—PRESUMPTIONS—FAILURE TO PRODUCE.

Where the defendant master had in its employ at the time of trial servants who witnessed the fatal accident, but failed to produce them,

---

it will be presumed that their evidence was not favorable to the master.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 97; Dec. Dig. ☞77(5).]

3. MASTER AND SERVANT ☞265(5)—INJURIES TO SERVANT—RES IPSA LOQUITUR.

Where a railroad employé was injured when a trunk fell or was thrown from a stack on a platform and the trunks if properly piled would not have fallen, the fact that a trunk fell is in itself sufficient to show negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 581, 898, 955; Dec. Dig. ☞265(5).]

4. WITNESSES ☞344(2) — IMPEACHMENT—VERACITY.

In a civil case the veracity of a witness cannot be impeached by proof of specific immoral conduct, but such impeaching testimony is confined to general reputation.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1125; Dec. Dig. ☞344(2).]

5. MASTER AND SERVANT ☞88(7)—INJURIES TO SERVANT—COURSE OF EMPLOYMENT.

Where a railroad employé was sitting on the edge of a platform waiting for other employés to perform certain labor which had to be done before he could commence work, he was in the discharge of his duties as an employé of the company.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 150; Dec. Dig. ☞88(7).]

6. DEATH ☞18(2) — ACTIONS — RIGHT OF ACTION.

Where a son contributed money at times to the support of his father, the irregularity of such contributions will not prevent the father from recovering damages for the son's wrongful death.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 20; Dec. Dig. ☞18(2).]

7. DEATH ☞99(1)—AWARD—EXCESSIVENESS.

A railroad employé, 27 years of age, earning $125 to $130 a month, who was strong, healthy, and experienced as a railroad man, received injuries resulting in death. Held that, in view of his possibilities of advancement in his chosen profession, an award of $25,000 was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125, 126; Dec. Dig. ☞99(1).]

8. DEATH ☞88—DAMAGES—RECOVERY.

In an action by a wife for the wrongful death of her husband, she can only recover her pecuniary loss and cannot recover for loss of care and attention.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 116; Dec. Dig. ☞88.]

Appeal from District Court, Karnes County; F. G. Chambliss, Judge.

Action by H. A. Blair against the San Antonio & Aransas Pass Railway Company. Plaintiff dying during its pendency, the action was revived in the name of Mrs. Lula Blair, administratrix. From a judgment for plaintiff, defendant appeals. Affirmed.

Proctor, Vandenberge, Crain & Mitchell, of Victoria, Williamson & Klingeman, of Karnes City, and Boyle & Storey, of San Antonio, for appellant. C. L. Bell, of Karnes City, and C. C. Harris and Arnold, Cozby & Peyton, all of San Antonio, for appellee.

FLY, C. J. This suit was instituted by H. A. Blair, seeking to recover damages alleged to have accrued by reason of personal injuries inflicted on him through the negligence of a porter in throwing a trunk upon him. He obtained judgment, but upon appeal to this court the judgment was reversed, and the cause remanded. 173 S. W. 1186. Since that time it was shown that H. A. Blair had died and his widow, Lula Blair, as administratrix and for G. W. Blair, father of deceased, filed a third amended petition, in which she alleged that her husband was injured through the negligence of appellant, in that its porter, who was engaged in placing trunks on a platform near where H. A. Blair was sitting, caused a trunk to fall upon and against him, and in the alternative it was alleged:

"That a trunk fell from the top of other trunks or baggage standing on said baggage platform, and in falling the said trunk struck H. A. Blair inflicting injuries upon him which resulted in his death as herein alleged; and the said trunk which fell had been placed upon the top of other trunks or baggage by the employé, or employés, of the defendant in the discharge of the duties of their employment for the defendant, and who had been intrusted by the defendant with the duty of handling trunks and baggage on said platform; and the said trunk which fell had been placed in an insecure position on top of other trunks or baggage, and the placing of said trunk in an insecure position upon other trunks or baggage, was negligence upon the part of the defendant, and such negligence was a direct and proximate cause of the trunk falling and of striking H. A. Blair, and of the injuries and death of H. A. Blair, and of the damages set forth in this petition."

The cause was tried with the aid of a jury, and resulted in a verdict and judgment in favor of Lula Blair, as administratrix, in the sum of $24,500, and in favor of G. W. Blair for $500.

[1-3] On the former appeal of this case it was held that, as to the only allegation of negligence, namely, that the porter had thrown the trunk upon and against H. A. Blair, evidence was insufficient. On the former trial deceased alone had sworn that the negro porter was at or near the pile of trunks when the trunk fell or was thrown, and this court held that the evidence did not tend to show that the trunk was thrown as was alleged. In the amended petition, upon which the last trial was had, the allegations were changed and amplified so as to make a case of the negligent handling or negligent placing of the trunk so that it fell from its position and struck the deceased. On this trial not only was the testimony of deceased introduced, but Grasshoff, who was with him at the time, testified that he saw the porter standing at the place from which the trunk fell. He also testified that it was customary for employés to sit or lie down on the platform near the piles of trunks or sit or stand on the ground near such platform, and passengers did the same. It was in evidence that H. A. Blair was very tall and could probably have seen the negro as he swore he did. There was no break or opening in the line of trunks

after the trunk fell which struck Blair. Grasshoff swore that he had been working about the platform for two or three years, and had never known a trunk to fall before. The testimony as to the porter being at or near the place whence the trunk fell was not contradicted, although the porter, Dock Hackett, and another witness, James Quigley, who was near or on the platform at the time, were present. Neither was placed on the witness stand, although both were in the employment of appellant and were in attendance on the trial as witnesses for appellant.

The fact that Grasshoff corroborated deceased, on this trial, as to the presence of the negro porter near the trunk when it fell; that no opening was left in the line of trunks when the trunk fell; that the height of deceased was proved; that employés and passengers were permitted, without warning, to use the platform near the piles of trunks; that no trunk had ever been known to fall before—each and all are facts not had on the former trial, which go to strengthen the theory that the trunk fell because it was not carefully and properly placed in its position. The fact that appellant, although it had its witnesses present, failed and refused to place them on the stand is another pregnant circumstance tending to establish the truth of appellee's testimony. The presumption is that the evidence of their witnesses would not have shaken the evidence of appellee's witnesses, nor strengthened the case of appellant. Welsh v. Morris, 81 Tex. 159, 16 S. W. 744, 26 Am. St. Rep. 801. As said in Mitchell v. Napier, 22 Tex. 120:

"Where a party is thus afforded the opportunity to explain, and fails or refuses to do so, the rational and legal presumption is, that a disclosure of the truth would make against him. * * *"

It was said by Lord Mansfield:

"It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other to have contradicted."

This is a quotation from an English case found by this court in Jones on Evidence, § 19. If the porter was not where the evidence of Grasshoff and H. A. Blair placed him, he and Quigley should have been placed on the stand to deny it.

Whatever may have been the aspect of the case on the former trial, the evidence at this time tends to show that the porter either caused the trunk to fall by handling it, or that he negligently piled it in such a manner that it slipped off its place and fell. There was other testimony besides that of Grasshoff tending to show that H. A. Blair could have seen a man standing behind the line of trunks. The height of the platform was shown, and it was not high enough with the trunks piled, as they were, to obscure the vision of a man in the position occupied by H. A. Blair. A photograph indicates that

the head of a man sitting down extended above the platform.

The testimony tends to show that if the trunks had been properly piled, none of them would have fallen; that H. A. Blair was in a position where it was customary for employés to go, and that it was not contributory negligence for him to occupy the position he held at the time of the accident. This conclusion is reached, not in view of the evidence on a former trial, but in view of that on the present trial. If the trunks had been properly stacked none would have fallen, and this circumstance in itself would furnish sufficient evidence to authorize a verdict for appellee. McCray v. Railway, 89 Tex. 168, 34 S. W. 95; Washington v. Railway, 90 Tex. 314, 38 S. W. 764. The first, second, and third assignments of error, which question the sufficiency of the testimony to sustain the verdict, are overruled.

[4] While appellee was upon the stand appellant sought to obtain from her testimony tending to show that she had been the proprietress of a house of prostitution and plied the vocation of a bawd therein during the years 1911, 1912, and 1913, before her marriage to deceased, which testimony was denied by the court. The evidence was clearly inadmissible. In civil cases it is not permissible to impeach the veracity of a witness by proof of immoral conduct. The evidence, to impeach a witness in a civil case in Texas, must be confined to testimony as to his general reputation. Insurance Co. v. Faires, 13 Tex. Civ. App. 111, 35 S. W. 55; Railway v. Roberts, 144 S. W. 691; Railway v. Adams, 42 Tex. Civ. App. 279, 114 S. W. 453; Moody v. Roland, 46 Tex. Civ. App. 412, 102 S. W. 911; Railway v. Creason, 101 Tex. 335, 107 S. W. 527. However disreputable the conduct of appellee may have been in past years, it has no bearing upon the issues of this case, and the only effect of the testimony would have been to hold the erring woman up to the scorn and contempt of those hearing the testimony. She may have reformed, at least the law will not permit such wanton attacks upon her, but will give her the privilege, unmolested, of doing as the woman brought to Jesus by scribes and pharisees was admonished to do, "Go and sin no more." The fourth, fifth, and sixth assignments of error are overruled.

The seventh assignment of error attacks the sufficiency of the evidence to justify the submission of a charge as to negligence on the part of appellant. It is disposed of by the discussion of the testimony made in connection with the first three assignments of error.

[5] The eighth assignment of error is overruled. H. A. Blair, while waiting on other employés to perform certain labor, so as to prepare for his work, was in the discharge of his duties as an employé of appellant, and consequently the clause in the charge, of

which complaint is made, is correct. Railway v. Welch, 72 Tex. 298, 10 S. W. 529, 2 L. R. A. 839; Moyse v. Railway, 41 Mont. 272, 108 Pac. 1062; Railway v. Maddux, 134 Ind. 571, 33 N. E. 345, 34 N. E. 511; Thomas v. Railway, 108 Minn. 485, 122 N. W. 456, 23 L. R. A. (N. S.) 954.

The ninth, tenth, eleventh, and twelfth assignments of error are without merit. The charge complained of is not upon the weight of the evidence, and was justified by the facts.

The thirteenth and fourteenth assignments of error are overruled. The evidence does not show that Blair, as a matter of law, was guilty of contributory negligence. The evidence tended to show that there was no vibration of the platform that would dislodge a trunk in a properly constructed pile and a trunk was never known to fall from the platform before. The employés constantly occupied positions on or near the platform. This testimony was not elicited on the former trial. A question of fact as to contributory negligence was raised by the negligence which was properly submitted to the jury.

[6] The evidence showed that H. A. Blair contributed money at times to the support of his father, G. W. Blair, and that evidence justified a verdict for $500, in favor of the father. The irregularity of the contributions did not preclude a recovery. Railway v. Martin, 25 Tex. Civ. App. 204, 60 S. W. 803. As said by this court in that case:

"It was for the jury to decide from the evidence what sums appellant might reasonably have expected to receive from her father, and in arriving at a conclusion * * * they could take into consideration the sums that had been contributed before his death, whether they had been given in stated amounts at stated times or not."

The charge presented every phase of the case, and the court did not err in refusing the special instructions asked by appellant.

[7, 8] The verdict is very large and as an original proposition would not be sustained by this court, but there is no evidence of passion or prejudice on the part of the jury, and this court has no authority to reduce the amount. Blair was 27 years of age when hurt, and was earning from $125 to $130 a month. He was strong and healthy, and was an experienced railroad man. His life was before him with all of its possibilities for accomplishment and increase of earning power. He was stricken down in the vigor of his young manhood, and we cannot say in the face of the verdict of the jury that his life was not worth to his wife the sum found by the jury. After the injuries were inflicted upon him he sickened, grew weaker and finally died, and his wife was not only deprived of the money that he earned and confided to her trust, but she lost the care, attention, and assistance that is tendered by every good and affectionate husband. The law only gives compensation for the pecuniary loss in cases of this class, but, as said by the Supreme Court in Railway v. Lehmberg, 75 Tex. 61, 12 S. W. 838:

"Every parent and husband has, for his wife and children, a pecuniary value beyond the amount of his earnings by his labor or vocation."

In the last case cited the court laid down the rule, since followed, in regard to the amounts found by juries in cases of this character. Says the court:

"The difficulties of proof are known to the lawmaker. In some states an attempt has been made to remove them to some extent by placing limits to the amount that may be recovered. In establishing such rules the idea of making compensation in each instance for the pecuniary value of the lost life is necessarily abandoned. When no amount is fixed by law and no rule is prescribed for making the calculation upon facts capable of exact ascertainment, it necessarily follows, we think, that the lawmaker intended that, having reference as far as practicable to conditions existing at the time of the death, juries from their own knowledge, experience, and sense of justice should fix and assess the proper sum. They are expected to act uninfluenced by passion, prejudice, or partiality, and to pay due regard to the ascertained facts and conditions surrounding the subject. When it appears to the court that they have disregarded these requirements, their verdict should be set aside. On the other hand, when the court is unable to determine that these things have not been observed by the jury, and when it does not appear that the verdict is not the result of the honest endeavor of the jury to follow their own convictions in the exercise of a power not precisely defined, we think the law intends that the jury's estimate, rather than the equally undefined one of the judges, shall prevail."

It is true that the size of a verdict itself might conclusively evidence that improper motives actuated and controlled the jury, but can it be said that a verdict of $25,000 for the life of a young robust man, with all the expectations, hopes, ambitions, and possibilities ahead of him, in a country where possibilities so often ripen into realities, and hopes into rich fruition, who was earning a fine salary, evidences passion and prejudice on the part of the jury? We think not.

The judgment will be affirmed.